[No. A024652. First Dist., Div. One. July 16, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR FLORES MENDOZA, Defendant and Appellant.

**COUNSEL**

Lyle W. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.**—A jury found defendant Arthur Flores Mendoza guilty of possession of phencyclidine (PCP), a felony, of being under the influence of that substance, a misdemeanor, and that he had four times previously been convicted of felonies. His appeal is from the judgment which was thereupon entered.

Finding no merit in the appeal, we affirm the judgment. Our reasons follow.

We state the several appellate contentions as they are phrased by Mendoza.

I. *Contention*: "Insufficiency of the evidence concerning guilt."

██ ██ We once again become concerned with the substantial evidence rule.

" 'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' . . . In applying this test, we must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Fosselman* (1983) 33 Cal.3d 572, 578 [189 Cal.Rptr. 855, 659 P.2d 1144].)

Applying these criteria, we state the trial's evidence as it was presumably found true by the jury.

In the early morning hours two police officers, trained and experienced in the suppression of narcotics and dangerous drugs, observed a Ford van with an expired license tab, and weaving from side to side on a highway. While the van was followed for about a half mile, the weaving continued, and the officers caused it to stop. The van's driver exited the vehicle and spoke to the officers. As he did, his speech was slurred, and "he lost his balance and stumbled to the left side and had to use his left hand against the van to maintain his balance." His eyes were "bloodshot" and as they "moved from side to [side] you were able to see that he had what's called Nystagmus, which is a bouncing of the eyes from a loss of muscle control." He appeared to be under the influence of alcohol or PCP. And he indicated that he had no driver's license, or registration for the vehicle.

One of the police officers then approached the vehicle more closely, and observed defendant Mendoza in the front passenger seat. Mendoza also had slurred speech, his eyes were "droopy," and he was "loud and hostile." He had the strong odor of alcohol about him. "His train of thought . . . was broken as was his speech. His response to my questions—he would answer a question that I previously asked several times in response to my new questions. In other words, I would ask him a question, he would give me an answer, and then two or three more questions down the line he would still be providing that same answer that he had given me sometime back. [The officer] believed he was under the influence of PCP as well as alcohol."

An officer also observed, in back of the van, an unclothed man and woman who also appeared to be under the influence of alcohol or some drug. They were asked to dress and the officer stepped back to allow them to do so unseen. As he did, the male escaped through the van's driver's front door leaving his shoes and socks behind. The man was *not* pursued, because "it was impractical to give chase to him and leave the other people with one officer."

The van's driver was arrested for driving under the influence of alcohol or PCP or both, and Mendoza was arrested for being under the influence of PCP. Upon the arrests, the officers searched the van for PCP or other controlled substances, and narcotics. Between the vehicle's driver's seat and passenger's seat was an engine "housing," or "cover" or "hump." Standing outside the vehicle, an officer observed in plain view, a "plastic baggie" such as was often used to package narcotics, or PCP, or other dangerous drugs. The baggie was situated between the passenger seat where Mendoza

had been seated, and the engine "hump" or cover. It was seized as evidence, and in it or behind it, were handrolled cigarettes such as were commonly "laced" with PCP. The handrolled cigarettes also were seized, and they were found to contain PCP. They formed the basis of the felony charge against Mendoza.

The foregoing was patently substantial evidence of Mendoza's guilt. And we discern *no* contention that the seizure of the baggie or the handrolled cigarette was in contravention of the Fourth Amendment, or any other constitutional dictate.

II. *Contention*: "Prosecutorial misconduct."

It is here argued that: "It is misconduct for the district attorney to comment on the failure of the defendant to testify during the trial."

During Mendoza's attorney's jury argument the following exchange occurred:

"'With respect to verbal aggressiveness I think a person would have to know Art Mendoza before you can—'

"Mr. Blackwood [the prosecutor]: 'Your Honor, I'm going to object to this. If he wants to put his client on the stand that's great but his testimony from his only contact with the defendant is not proper. I would object to that.'

"Mr. Cavagnaro [defense counsel]: 'Your Honor, I was not—'

"Mr. Blackwood: 'Be happy to cross-examine the defendant if he wants to put him on the stand. We can cease the proceedings right now and let him put the show on.'

"Mr. Cavagnaro: 'Your Honor, I was not finished with the sentence. I was not going to say anything about his personality from my knowledge.'"

We first note that the trial court instructed the jury, as is usual where a criminally charged defendant does not testify, in the language of CALJIC Nos. 2.60 and 2.61, as follows: "It is a constitutional right of the defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference from the fact that he does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way.

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the people to prove beyond a reasonable doubt every essential element of the charge against him. And no lack of testimony on defendant's part will supply a failure of proof by the people so as to support a finding against him on any such essential element."

The prejudice, if any there were, resulting from the prosecutor's remarks was thus alleviated.

Moreover, defense counsel's response to the prosecutor's remarks may not reasonably be deemed an objection. And there was no defense request for an appropriate jury admonition, a condition precedent to raising a misconduct issue on an appeal. (See *People* v. *Green* (1980) 27 Cal.3d 1, 27-36 [164 Cal.Rptr. 1, 609 P.2d 468].)

We observe no substantial misconduct of the prosecutor, and certainly no prejudice to Mendoza, in light of the strong evidence of his guilt.

III. *Contention*: "Discriminatory prosecution."

■ The "discriminatory prosecution" of the contention was the failure of the police officers to arrest the female found in the Ford van. One of the officer's explanation was: "Well, basically because she was a female. She would have had to have been taken to Valley Medical Center. It was a misdemeanor crime, being under the influence, would have taken approximately six hours to get her cleared through Valley Medical Center prior to being taken to Elmwood Woman's Facility. Also there was two males in custody on felony offenses, and there was only two officers. We felt being a misdemeanor, the elements of the crime could be reported in the form two. If the D.A. desired he could later file charges against her."

To be a defense to a criminal charge the "discrimination" must be "*invidious*," or rationally "unjustifiable," such as "the singling out of an invidiously selected class for special prosecutorial treatment, whether that class consists of black or white, Jew or Catholic, Irishman or Japanese, United Farm Worker or Teamster. . . . Essential to a defense of discriminatory prosecution is the establishment by the defendant that he was engaged in protected activity, which activity resulted in his arrest. . . . [And:] '[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. . . .' Throughout the years, courts have uniformly recognized that administrative officials enjoy broad discretion in determining the specific circumstances under which established punitive sanctions should

be invoked." (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44], *passim.*)

Under these criteria, we discern neither "invidious" or "unjustifiable" discrimination, nor "abuse of prosecutorial discretion."

IV. *Contention*: "Refusal to allow defense of false name given by woman."

■ It is argued that: "Evidence that the female passenger gave the police a false name is circumstantial evidence of her guilty state of mind."

We nevertheless fail to see any substantial relevancy of the evidence. The trial judge reasonably excluded it under Evidence Code section 352.

V. *Contention*: "Denial of defendant's motion to sever."

■ The two charged offenses were reasonably of the same "class of offenses," and were "connected in their commission." In either or both such events, they were properly chargeable and triable together. (Pen. Code, § 954.) And they were "cross-admissible," i.e., either would be relevant and therefore admissible in a trial for the other. In such situations, there can be no prejudice in denying a severance. (*Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699].)

VI. *Contention*: "Violation of defendant's *Miranda* rights."

■ Record reference is *not* made to any statements made or placed in evidence, in violation of *Miranda*. Rule 15(a), California Rules of Court, has been completely disregarded. "[A] point suggested on appeal cannot be considered where the brief fails (as it does herein) to point out the page of the record where the alleged error is supposed to have occurred." (*People* v. *Gidney* (1937) 10 Cal.2d 138, 142 [73 P.2d 1186].) We apply that rule.

VII. *Contention*: "Expert witnesses not properly qualified to testify."

The complaint is of the qualifications of Ms. Cardema who testified as "an expert in the analysis of blood for the presence of PCP," and of Ms. Obispado who testified as a "forensic toxicologist."

"Ms. Cardema had worked at the [county's] laboratory of criminalistics for 3 years, and had been doing blood fluid analyses for PCP for 2 years. During that time she had done about 2,000 such analyses. [Her formal] education included a Bachelor of Arts degree after 4 years of study at the University of Santo Tomas in the Philippines, and [she had much] on-the-

job training at the county's criminalistics laboratory." Ms. Obispado held a "Bachelor of Science degree in chemistry from the University of the Southern Philippines, as well as her on-the-job training in PCP symptoms at the county's criminalistics laboratory. [She had taken] post-graduate courses, [and had attended] seminars of . . . the California Association of Toxicologists, at which papers dealing with PCP were read, and [she had herself read] articles in professional books and [viewed] films dealing with PCP symptoms."

██ "The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown." (*People* v. *Kelly* (1976) 17 Cal.3d 24, 39 [130 Cal.Rptr. 144, 549 P.2d 1240].)

We observe no abuse of discretion in finding the witnesses to be qualified.

VIII. *Contention*: "Refusal to give defendant's requested jury instructions."

The rejected jury instructions follow:

"1. That past usage of PCP was not sufficient for conviction of being under the influence under Health and Safety Code Section 11550.

"2. That the mere handling of a controlled substance for the purpose of getting rid of it does not constitute possession or aiding and abetting possession.

"3. That fact that defendant is in close proximity to or has access to a controlled substance is not enough in and of itself to prove possession. That something more is required to show possession."

██ One criminally charged is reasonably entitled to instruction on his theories of defense which are supported by the trial's evidence. He is *not* entitled to such instructions in language chosen by himself. "[T]here is no requirement that the court instruct in the exact language submitted by the defendant, or that it give redundant or repetitious instructions." (*People* v. *Bowman* (1966) 240 Cal.App.2d 358, 387 [49 Cal.Rptr. 772].

██ Here (instruction 1), it was otherwise made clear to the jury that Mendoza was being tried for being under the influence of PCP at the time of his arrest. And (instruction 2), there was no evidence reasonably supportive of his present claim of handling the PCP for "the purpose of getting rid of it," and (as to instruction 3), the jury were properly told that "access

to a controlled substance is not enough in and of itself to prove possession," in this manner:

"Every person who unlawfully possesses any controlled substance such as Phencyclidine, is guilty of the crime of illegal possession of a controlled substance. In order to prove the commission of such a crime, each of the following elements must be proved: One, that a person unlawfully exercised control or had the right to exercise control over a certain controlled substance; two, that such person had knowledge of its presence; three, that such person had knowledge of its nature as a controlled substance; and four, that the substance was in an amount sufficient to be used as a controlled substance. The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is then in actual possession of it. A person who, although not in actual possession, knowingly has the right of control over a thing either directly or through another person or persons, is then in constructive possession of it. The law recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession."

IX. *Contention*: "Denial of defendant's Penal Code 1118.1 motion."

■ Penal Code section 1118.1 authorizes a defense motion for an acquittal at the close of the People's case, on the ground that at that point sufficient evidence of guilt has not been established. But here the evidence pointed out in part I above had been adduced *before* close of the People's case. There was thus substantial evidence of Mendoza's guilt at that point.

X. *Contention*: "Insufficiency of the evidence concerning the prior convictions."

■ Defendant Mendoza, as noted, was charged, tried, and convicted under the name of Arthur *Flores* Mendoza. The instant argument is that the People purported to establish Mendoza's prior convictions by certified copies of records, three of which referred to Arthur *Contreros* Mendoza, and the fourth to Arthur *Lawrence* Mendoza, aka Arthur Mendoza, aka Arthur *Contrerras* Mendoza. It will be seen that the dispute Mendoza raises concerns his *middle* name.

California may be called a "common law" state. "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State." (Civ. Code, § 22.2.)

"By the common law, since very early times, a legal name has consisted of one Christian or given name, and one surname, patronymic, or family name, the given name being used first and the surname last." (*Evangeline Bank & Trust Co.* v. *Deville* (La. 1979) 367 So.2d 1252, 1254; 65 C.J.S., Names, § 3, p. 3, and see authority there collected.)

"Middle names and initials generally are held immaterial, particularly in jurisdictions where the law recognizes but one Christian or given name; . . ." (65 C.J.S., Names, § 4, p. 5, and see authority there collected.)

"Under the early common law, still recognized in some states, a middle name or initial was not recognized. And frequently it is held to be immaterial whether a mistake is made in the middle name of a person, or whether such name is omitted entirely from an indictment, . . ." (57 Am.Jur.2d, Names, § 4, p. 277, and see authority there collected.)

The rule is expressly followed in California.

"By the common law, since the Norman Conquest, a legal name has consisted of one Christian name and of one surname. . . . And, under the well-settled rule that the law recognizes only one Christian name, it has been repeatedly held that the insertion, omission of, or mistake in the middle name, or initial in a criminal or civil proceeding is therefore immaterial. [And] 'Where the given name is written then the middle name or letter may be disregarded in identifying the individual. . . .'" (*Langley* v. *Zurich Gen. Acc. & L. Ins. Co.* (1929) 97 Cal.App. 434, 437-438 [275 P. 963].)

It has long also been the rule in California, in the absence of countervailing evidence, that *identity of person may be presumed, or inferred, from identity of name.* (*People* v. *Brucker* (1983) 148 Cal.App.3d 230, 242 [195 Cal.Rptr. 808]; *People* v. *Sarnblad* (1972) 26 Cal.App.3d 801, 805-806 [103 Cal.Rptr. 211]; *People* v. *Luckett* (1969) 1 Cal.App.3d 248, 253 [81 Cal.Rptr. 539].) Here there was no countervailing evidence.

And, although here found irrelevant, the spelling of Mendoza's middle name as to one of the prior convictions, as Contre*rr*as with two "r's," with obviously the same pronunciation, is manifestly immaterial under the rule of "*idem sonans.*" (See *People* v. *Fick* (1891) 89 Cal. 144, 148-149 [26 P. 759]; *People* v. *Harrison* (1910) 14 Cal.App. 545, 549 [112 P. 733].)

The jury were thus permitted to determine that the Arthur Mendoza of the case before them was the *Arthur Mendoza* who had suffered the several prior convictions.

Moreover, we observe that the contention presently before us went unmentioned in the superior court. It is a strict rule of our law that where such evidence is unobjected to at trial, the point may not for the first time be raised on appeal. (Pen. Code, § 1259; Evid. Code, § 353; *People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].) For this reason also, the instant contention is found invalid.

Although not formally assigned as error, under the instant contention Mendoza complains that the jury were not adequately instructed "on their duty and the law regarding their deliberations on the priors," in that the failure to instruct on circumstantial evidence resulted in the jury wrongfully finding that defendant had suffered four felony convictions. It seems to be insisted that the court should have instructed that circumstantial evidence may not be the basis of such now *final* prior convictions "unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion."

The argument approaches absurdity. It is invalid.

XI. *Contention*: "Denial of defendant's motion to limit use of prior convictions."

■■■ On a so-called *Beagle* motion the trial court ruled that *one* of Mendoza's four prior felony convictions, i.e., for receiving stolen property, might be used for impeachment should he testify in his own behalf. It had been argued that Mendoza's instant offenses had occurred before adoption of Proposition 8, at which time placing such a prior conviction in evidence for that purpose was *not* permissible.

We disagree. In our opinion such a ruling as was here made below would be within the court's discretion under *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]), and before the advent of Proposition 8. Mendoza has proffered no contrary authority, and *Beagle* itself held that: "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (6 Cal.3d at p. 453.)

XII. *Contention*: "Sentencing error under Penal Code section 1170."

■■■ In sentencing Mendoza, the trial court stated: "Mr. Mendoza, for violating section 11377(A) of the California Health and Safety Code, the court is going to impose the aggravated term of three years, with the conditions set forth in rule 441 of the California Judicial Council rules attached to the probation report [i.e., 'The defendant's prior convictions as

an adult or adjudications of commission of crimes as a juvenile are numerous' or of increasing seriousness' (Cal. Rules of Court, rule 421(b)(2))], and also will impose an additional one-year enhancement pursuant to the terms of 667.5(B) of the California Penal Code, for a total of four years in the state prison.''

It is here argued that: ''[T]he court used the prior felony record of defendant to aggravate the sentence and then used one of the same prior felony convictions to enhance the sentence on the basis that defendant had suffered a prior prison sentence. The use of the same factors to enhance and to aggravate is prohibited by Penal Code section 1170(b).''

Again we disagree. The service of *one* ''prior separate prison term'' for a prior felony is manifestly *not* the same factor as that ''prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness.''

As has been seen, we find no error. But were we to assume error, arguendo, as to all or any of the foregoing contentions, we should be obliged to declare it harmless under the criteria of the state's Constitution, article VI, section 13, *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], and *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.