[No. H013261. Sixth Dist. Sept. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT MONROE FISHER, Defendant and Appellant.

## COUNSEL

Joshua Weinstein, under appointment by the Court of Appeal, and Naomi Hirayasu for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—After the denial of his motion to suppress, defendant Scott Monroe Fisher pled guilty to felony possession of methamphetamine, a controlled substance (Health & Saf. Code, § 11377, subd. (a)), and the misdemeanor of being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)). Defendant also admitted that he had a prior conviction of a serious or violent felony (Pen. Code, § 667), namely assault with personal use of a deadly weapon, and that he had served two prior prison terms (Pen. Code, § 667.5).

The trial court sentenced defendant to 32 months in prison, based on the lower term of 16 months for the felony, doubled under the "three strikes" law. The court struck the prison prior enhancements pursuant to the plea bargain.

Defendant contends on appeal that the police had no basis to detain him, since he was the passenger in a car stopped for a traffic violation. For the reasons stated below, we will affirm the judgment.

*Facts*

The suppression motion was made at a special hearing in the superior court. We do not review the preliminary examination transcript as there was no stipulation to its consideration by the superior court. (*People v. Neighbours* (1990) 223 Cal.App.3d 1115, 1118-1120 [273 Cal.Rptr. 32].) The evidence at the hearing was essentially uncontradicted. ■ " 'Insofar as the evidence is uncontradicted, we do not engage in a substantial evidence

review, but face pure questions of law.'" (*People* v. *Trujillo* (1990) 217 Cal.App.3d 1219, 1224 [266 Cal.Rptr. 473].) To the extent there were factual conflicts, we resolve them in favor of the superior court's implied findings. (*Id.* at pp. 1223-1224.)

On June 1, 1994, about 4:20 a.m., San Jose Police Officer Richard Tomlin was on patrol in a marked vehicle. He noticed a Mazda car painted primer gray that fit the description of a vehicle used in auto burglaries. He paced the car traveling 40 m.p.h. in a 30-m.p.h. residential zone. He turned on the patrol car's nonflashing red and blue lights and stopped the Mazda. The stop was about one-quarter to one-half mile away from a high-crime area. Two men occupied the car, the driver and the passenger in the front seat. The officer approached the driver, shining his flashlight into the car. The driver appeared to be under the influence of something. His eyes were glassy and bloodshot. He had a blank stare. He said he had no identification. His speech was slurred. The officer thought he smelled alcohol. The officer asked the driver to get out of the car.

When the driver was out of the car and standing near the curb, the officer pat-searched him. He found no weapons. The officer made additional observations. The driver's pupils were constricted and unresponsive to light. His eyelids fluttered when his eyes were closed. His pulse was elevated. His skin felt warm.

The officer told the driver that he appeared to be under the influence of a stimulant. The officer asked if he had any narcotics. The driver said he had a bindle of crank (a term for methamphetamine) between the seats. The officer arrested and handcuffed the driver and placed him in the patrol car. The officer asked the driver if he could search the car. The driver said, "yes."

Officer Tomlin approached the passenger's door to talk to defendant. Defendant had remained seated in the car during Tomlin's five- to ten-minute encounter with the driver. By this time, another officer had arrived and positioned himself on the sidewalk to cover Tomlin. At that time Tomlin was unaware if defendant was on parole.[1]

Defendant stepped out of the car at Tomlin's request. Tomlin made the request so that he could retrieve the methamphetamine. It can be dangerous for an officer to search a vehicle containing a passenger. Tomlin also wanted to see if defendant could identify the driver.

---

[1] The prosecution offered documentary evidence that defendant was on parole and subject to a search condition. The trial court excluded the evidence as irrelevant.

Defendant was wearing a loose jacket that was open in the front. Tomlin pat-searched defendant "[j]ust to ascertain whether there were weapons or not." He found no weapons. Tomlin tried to explain to defendant why he asked him to get out of the car. He asked defendant to identify the driver. Tomlin moved defendant over near the front of the patrol car.

As Tomlin talked to defendant, Tomlin made the following observations. Defendant's eyes were glassy. His pupils were dilated and nonreactive. He displayed eyelid tremors. His skin was hot. His mouth was dry. His pulse rate was about 120 beats a minute.

Tomlin told defendant that he appeared to be under the influence of a stimulant. Tomlin asked defendant if he had narcotics in the car. Defendant said he had a bindle of crank on the floor.

*The Basis for the Detention*

On appeal defendant contends that there was no basis for the police to detain him. The detention occurred, according to defendant, either when the car was stopped, when he was asked to get out of the car, or when he was pat-searched. Defendant seeks suppression of the officer's observations of him and his admission, but he does not seek suppression of the methamphetamine subsequently found in the car.

The People concede that defendant was detained when he was pat-searched (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1240, fn. 3 [285 Cal.Rptr. 16]), but contend he was not detained before that time.

In this appeal we determine whether and when Officer Tomlin had reasonable grounds to detain the defendant. If Officer Tomlin was justified in detaining defendant before he asked defendant to get out of the car, then we need not determine whether defendant was detained by the request to exit the car or when he was pat-searched.

The usual test for a detention is whether a reasonable person would have believed he or she was free to leave. (*People* v. *Bailey* (1985) 176 Cal.App.3d 402, 405 [222 Cal.Rptr. 235]; *People* v. *Gonzalez* (1992) 7 Cal.App.4th 381, 383 [8 Cal.Rptr.2d 640].)[2] Here, there is no indication that defendant was not free to go about his business when the car was first

---

[2]We note that *Florida* v. *Bostick* (1991) 501 U.S. 429 [115 L.Ed.2d 389, 111 S.Ct. 2382] held that the "free to leave" test is inapplicable to agents questioning passengers on a bus. (*Id.* at pp. 435-438 [115 L.Ed.2d at pp. 399-400].) In those circumstances, the "appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." (*Id.* at p. 436 [115 L.Ed.2d at p. 400].)

stopped and while Officer Tomlin was occupied with the car's driver. Defendant made no attempt to depart and Tomlin exercised no control over defendant prior to asking him to step out of the car. Defendant had no indication that the red light on the police car was directed at him, rather than at the driver of the car for speeding. (Cf. *People* v. *Bailey*, *supra*, 176 Cal.App.3d at pp. 405-406 [sole occupant of car detained by red light].)

In response to defendant's contention that he was detained when the car was stopped, we believe that in constitutional terms a passenger is not "lawfully stopped" (contra, *People* v. *Hunt* (1990) 225 Cal.App.3d 498, 505 [275 Cal.Rptr. 367]), seized, or detained (contra, *People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1460 [266 Cal.Rptr. 587]) merely because the vehicle in which he or she is riding is stopped for a traffic violation.

■ Next, defendant contends that he was detained by the officer's request to get out of the car. (See, e.g., *People* v. *Maxwell* (1988) 206 Cal.App.3d 1004, 1010, fn. 3 [254 Cal.Rptr. 124]; *People* v. *Grant, supra*, 217 Cal.App.3d at pp. 1460-1462.)

The California Supreme Court has recently again discussed the test for a valid detention. ■ "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People* v. *Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) It remains true that " '[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . .' " (*Id.* at p. 233, quoting *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

We observe that the federal Ninth Circuit Court of Appeals has recently discussed when vehicle occupants may be ordered out and has expanded the law in this area holding "that once a police officer has lawfully stopped a vehicle for a traffic violation, the officer may, consistent with the Fourth Amendment and despite the absence of probable cause or reasonable suspicion of criminal activity, order all occupants of the vehicle to step outside." (*Ruvalcaba* v. *City of Los Angeles* (9th Cir. 1995) 64 F.3d 1323, 1327.) *Ruvalcaba, supra*, explained: "Having all occupants step out of the vehicle protects the safety of the officer while the officer is dealing with the driver regarding the traffic violation. We believe that the governmental interest weighs strongly in favor of permitting a police officer to order all occupants

out of a vehicle." (*Ibid.*) *People* v. *Webster* (1991) 54 Cal.3d 411 [285 Cal.Rptr. 31, 814 P.2d 1273] held that an officer was entitled, "[f]or his own safety," to remove the passengers of a car prior to searching it for registration papers. (*Id.* at p. 431.)

On the facts before us we conclude that Officer Tomlin had a basis to detain defendant before he asked him to get out of the car. Here, prior to approaching defendant, who was located in the front passenger's seat, Officer Tomlin was aware that the driver of the car was under the influence of a stimulant and that there was a bindle of methamphetamine *between the seats* in the car. The driver had given Tomlin consent to search the car. It would be unreasonable and unsafe to require the officer to search the car for contraband while the passenger remained seated in the car. Under these circumstances, it was reasonable to ask defendant to step out of the car and to detain defendant to ascertain his connection to the illegal drug. While defendant's mere presence in the car may not furnish probable cause to arrest him, it did furnish an objective manifestation that he may have been involved in possessing or transporting methamphetamine. (Cf. *People* v. *Vermouth* (1971) 20 Cal.App.3d 746, 755-756 [98 Cal.Rptr. 65] [probable cause to arrest passenger for possession of billy found near driver's seat].) "A defendant who has joint or exclusive possession of narcotics in a moving vehicle may be found guilty of unlawful transportation of narcotics." (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; cf. *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612 [71 Cal.Rptr. 604]; *People* v. *Mendoza* (1986) 183 Cal.App.3d 390, 395-396 [228 Cal.Rptr. 308] [joint possession of drugs located in vehicles].) Here, the detention of defendant was justified before the officer asked him to get out of the car and before the officer observed that defendant, like the driver, was under the influence of a stimulant. (Cf. *People* v. *Souza, supra,* 9 Cal.4th at p. 242.)

It is defendant's possible connection to the driver's criminal activity of possessing or transporting methamphetamine that distinguishes this case from the cases on which defendant relies. In *People* v. *Gonzalez, supra,* this court held that "[b]eing a passenger in a car stopped for a quick, unsignaled lane change is not sufficiently suspicious behavior" to justify a detention. (7 Cal.App.4th at p. 386.) In *People* v. *Spicer* (1984) 157 Cal.App.3d 213 [203 Cal.Rptr. 599], the officers suspected that the driver was drunk based on weaving driving, staggering walking, and a strong smell of alcohol. (*Id.* at p. 216.) The seated passenger was not implicated in that behavior at the time her identification was requested.

Since we conclude that Officer Tomlin had reasonable grounds to detain defendant prior to the time he asked defendant to get out of the car, we need

not consider the People's alternative justifications for the detention, namely the proximity to a high crime area, that the car matched a description of one used in auto burglaries, or a parole search condition of which Tomlin was unaware. (Cf. *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519].) We also need not consider whether the pat-search was justified because it yielded nothing incriminating.

*Disposition*

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.