Filed 12/16/15  P. v. Garcia CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RAVEN INEZ GARCIA,<br><br>        Defendant and Appellant. | A143575<br><br>(Lake County<br>Super. Ct. No. CR-936062-B) |

Defendant and appellant Raven Inez Garcia pled no contest to several narcotics offenses after the trial court denied her motion to suppress evidence uncovered during a traffic stop.  On appeal, she contends the court erred in denying her motion to suppress.  We affirm.

BACKGROUND

In June 2014, the Lake County District Attorney filed a complaint charging appellant with possession of methamphetamine for sale (Health & Saf. Code § 11378), transportation of methamphetamine (Health & Saf. Code § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code § 11377, subd. (a)), and possession of drug paraphernalia (Health & Saf. Code § 11364.1, subd. (a)(1)).

Appellant filed a motion to suppress evidence.  At the hearing on the motion, the prosecution relied on the testimony of Lake County Deputy Sheriff Nick LaVelle, who described a traffic stop involving a car driven by appellant and in which Thomas Peterson

1

was a passenger.[1]  The encounter was recorded on a device attached to LaVelle's patrol car, and the recording was played during the hearing.  LaVelle testified he stopped appellant's vehicle on June 1, 2014, at approximately 2:10 p.m., because the registration tags on her car were expired.  Appellant said she had paid to renew the registration, but had not yet received a new sticker.  During this interaction, LaVelle recognized Peterson, who was in the front passenger seat; LaVelle had been a correctional officer at the Lake County Jail while Peterson was an inmate there.  Peterson told LaVelle he was out on parole.

LaVelle asked Peterson, "You don't have any shit on you or anything like that?"  LaVelle then instructed Peterson to exit the car so he could conduct a parole search; the search uncovered cash totaling $879 and a pocketknife.  After Peterson was removed from the car, LaVelle saw through the open car door a small plastic bag containing a white crystalline substance that he believed to be methamphetamine directly behind the passenger seat in which Peterson was sitting.  Levelle directed appellant to exit the car in order to determine her involvement in the methamphetamine possession.  When appellant stepped out of the car, LaVelle noticed she had "a large object in her right front pants pocket."[2]  The deputy was concerned Peterson might have passed appellant a weapon to avoid being found with it during a parole search.  He was also concerned because "drugs and weapons go hand in hand."  LaVelle pat-searched appellant and asked her to show him the item in her pocket.  Appellant removed a digital scale from her pocket.  She said she used it for cooking, but the scale had a white crystalline substance on it.

LaVelle handcuffed appellant and took her to the patrol car.  Appellant was advised of her *Miranda* rights.  She admitted she had other items on her person, and

---

[1] On appeal, we view the evidence in a light favorable to the trial court's ruling.  (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)  Our factual summary reflects this standard of review.  (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1056, fn. 1.)
[2] On cross-examination, LaVelle responded affirmatively to defense counsel's question, "When you patted [appellant] down you noticed a hard object in her . . . pants pocket; correct?"  But the trial court accepted the deputy's testimony that he made a "visual observation of a bulge in [appellant's] pants pocket."

handed LaVelle a bag of methamphetamine, a glass smoking pipe, and packaging material. There was an additional digital gram scale in the back seat.

At the end of the hearing, the trial court denied appellant's motion to suppress. Subsequently, appellant pled no contest to the charges. The possession charge was stricken as a lesser included offense of the possession for sale charge. The court suspended imposition of sentence and placed appellant on formal probation for three years. This appeal challenging denial of the motion to suppress followed. (See Penal Code, § 1538.5, subd. (m).)

## DISCUSSION

Appellant concedes LaVelle's detention of her vehicle was a lawful traffic stop and does not dispute it was lawful for LaVelle to direct Peterson to exit the vehicle upon discovering he was on parole and subject to search. (See *People v. Schmitz* (2012) 55 Cal.4th 909, 926 [search of car permissible where passenger was parolee subject to a search condition].) Appellant contends, however, that LaVelle violated her federal constitutional rights under the Fourth Amendment when he prolonged her detention beyond the time necessary for the traffic stop and performed a pat-search of her person. We disagree.

"The standard of review of a trial court's ruling on a motion to suppress is well established . . . . ' "On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court that are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions." ' " (*In re Lennies H.*, *supra,* 126 Cal.App.4th at p. 1236.) "Whether a search is reasonable must be determined based upon the circumstances known to the officer when the search was conducted." (*In re H.M.* (2008) 167 Cal.App.4th 136, 144.)

At the outset, we reject appellant's contention that insufficient evidence supports the trial court's finding that LaVelle noticed suspected methamphetamine behind the passenger's seat after removing Peterson from the car and *before* appellant was

searched.[3]  Appellant points to the fact that the transcript of the encounter does not contain any reference to LaVelle noticing a bag or other object within the car before he ordered appellant to exit the vehicle.[4]  At the hearing, LaVelle acknowledged he did not "make note of or confront anyone" about his discovery until after he had detained and handcuffed appellant.  LaVelle explained he did not immediately raise the subject because appellant was "still in the vehicle, unknown whether she had any weapons or anything else accessible to her, and I wasn't going to begin an investigation and questioning of Mr. Peterson with that unknown circumstance."

Defense counsel argued at the end of the hearing, "I think the tape and the photographs create a basis for a healthy skepticism to arise in the mind of this court as to whether an officer could have seen that item in the way he testified he did."  But the trial court rejected that view; it stated that video and photographic evidence supported the officer's testimony that he saw the suspected methamphetamine through the open front passenger door "in the process of removing" Peterson from the car.  We defer to the trial court's credibility determination.  (*People v. Lawler* (1973) 9 Cal.3d 156, 160 ["the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court"].)  Substantial evidence supports the court's finding that LaVelle observed the suspected methamphetamine before ordering appellant out of the car.

LaVelle's observation of methamphetamine in the car provided a basis for the officer to ask appellant to exit the vehicle.  As explained in *People v. Fisher* (1995) 38 Cal.App.4th 338, 345, "While defendant's mere presence in the car may not furnish probable cause to arrest him, it did furnish an objective manifestation that he may have

---

[3] We do not understand appellant to contend that LaVelle's verbal exchange that led to the discovery Peterson was on parole was itself illegal.  The transcript of the recording of the traffic stop reflects that the deputy discovered that fact in the midst of his initial interactions with appellant regarding her car registration and driver's license.

[4] The transcript actually reflects that, immediately after arresting appellant, LaVelle asked her, "Whose dope's in that car?"  This may be a reference to the suspected methamphetamine LaVelle said he observed before pat-searching appellant.

4

been involved in possessing or transporting methamphetamine." Thus, appellant's contention that the traffic stop was unreasonably prolonged fails. (*Id.* at p. 345 [observation of narcotics in car during traffic stop provided basis for detention arising from request to exit car].)

Appellant also contends that, even if she was properly directed out of the car, LaVelle's pat-search of her after she exited the vehicle violated the Fourth Amendment because it was not supported by a reasonable suspicion she was armed. "In the context of an ordinary traffic stop, an officer may not pat down a driver and passengers absent a reasonable suspicion they may be armed and dangerous." (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1377 (*Collier* ).) An officer need not be "absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger." (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074, citing *Terry v. Ohio* (1968) 392 U.S. 1, 27.)

The facts of *Collier* are instructive. In that case, two sheriff's deputies lawfully stopped a car one afternoon because it did not have a front license plate. (*Collier*, *supra*, 166 Cal.App.4th at p. 1376.) The deputies smelled marijuana emanating from the driver's and passenger's sides of the car. (*Ibid.*) The deputies asked the defendant passenger to get out of the car and observed he was wearing baggy clothing that might conceal a weapon. (*Ibid.*) The deputies conducted a pat down search and found a loaded handgun and PCP in a pants pocket. (*Id.* at pp. 1376–1377.) The *Collier* court concluded that, in " 'connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others.' " (*Id.*, at p. 1378, quoting *United States v. Sakyi* (4th Cir. 1998) 160 F.3d 164, 169.) Although the defendant argued in *Collier* that the search was unreasonable because there were no "furtive gestures," there was no "gang evidence," and the traffic stop did not occur in a high crime area, the court concluded the "pat-down was reasonably necessary

because the officers had probable cause to search the car interior and had decided to do so." (*Id.* at p. 1378.)

Appellant argues the pat-search was unreasonable because there was no evidence her "size or demeanor posed a threat to Deputy LaVelle." However, as in *Collier*, this "was no ordinary traffic stop." (*Collier*, *supra*, 166 Cal.App.4th at p. 1377.) LaVelle had actually observed a bag of suspected methamphetamine in the car, and, as numerous courts have recognized, " 'guns often accompany drugs.' " (*Id.* at p. 1378; see also *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1739 ["[I]t is common knowledge that perpetrators of narcotics offenses keep weapons available to guard their contraband."].) Moreover, LaVelle testified he observed a large object in appellant's pocket when she stepped out of the vehicle. " '[I]n the absence of factors allaying . . . safety concerns,' " (*Collier*, *supra*, 166 Cal.App.4th at p. 1378), it was reasonable for LaVelle to pat-search appellant upon her exit from the car. Notably, a pat-search was a less intrusive means of addressing safety concerns than handcuffing. (*People v. Stier* (2008) 168 Cal.App.4th 21, 28.)

The trial court did not err in denying appellant's motion to suppress.

DISPOSITION

The trial court's judgment is affirmed.

6

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A143575)

7