Filed 4/8/21  P. v. Padilla CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ALEX PADILLA,<br><br>  Defendant and Appellant. | D077463<br><br><br>(Super. Ct. No. JCF001665) |

APPEAL from a judgment of the Superior Court of Imperial County, Marco D. Nunez, Judge.  Affirmed as modified.

Neil F. Auwarter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Seth Friedman, and Kathryn Kirshbaum, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A deputy sheriff observed defendant Alex Padilla walking down the street and stopped to question him about an attempted break-in. Before the deputy could fully exit his vehicle, the defendant attacked the deputy using his fists and a knife, seized the deputy's handgun, and fired two shots that, thankfully, did not strike the deputy.

The defendant was found guilty of three counts of assault on a peace officer (Pen. Code,[1] § 245, subds. (c), (d)(2); counts 2–4), one count of making a criminal threat (§ 422; count 5), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6), and one count of resisting an executive officer (§ 69, subd. (a); count 7). The trial court found the defendant suffered two prior convictions and sentenced him to prison for an indeterminate term of 39 years to life consecutive to a determinate term of 30 years.

The defendant appeals the judgment and asserts his convictions for assault on a peace officer must be reversed due to instructional errors. In particular, he contends the trial court erred by: (1) instructing the jury with a modified version of CALCRIM No. 2670, which allegedly misled the jury into believing the prosecution did not need to prove the deputy was lawfully performing his duties when the defendant assaulted him; and (2) failing to instruct the jury on lesser included offenses. We conclude there were no instructional errors. Therefore, we reject the defendant's challenges to his convictions for assault on a peace officer.

Additionally, the defendant asserts the court committed sentencing errors. The amended information alleged the defendant suffered two prior convictions that qualified as strikes under the Three Strikes Law, but it did

---

[1]     Further undesignated statutory references are to the Penal Code.

not allege the convictions triggered five-year prior serious felony conviction enhancements under section 667, subdivision (a). Nonetheless, the court imposed prior serious felony conviction enhancements and, furthermore, included those enhancements when calculating the greatest minimum term for the indeterminate life sentence on the controlling count (count 3). The defendant argues, and the People concede, the imposition of these unpled enhancements violates section 1170.1, subdivision (e). We agree.

Therefore, we modify the sentence for counts 2, 3, 4, 5, and 7 by striking the five-year prior serious felony conviction enhancements attached to those counts. Further, we modify the sentence for count 3 by reducing the indeterminate term from 39 years to life to 29 years to life. In all other respects, the judgment is affirmed.

II

BACKGROUND

A

*Factual Background*

One evening, an Imperial County deputy sheriff responded to a report of a disturbance at a duplex. A resident of one of the duplex units reported that someone in the next-door unit was banging on her walls and attempting to gain entry to her unit. When the deputy arrived, an adjoining door between the units was pushed open. The deputy conducted a safety check in the next-door unit and nobody was inside. The deputy was aware the defendant lived in the next-door unit.

The deputy spoke to the defendant's brother outside the duplex and told him to talk to the defendant. The deputy then got into his vehicle and drove in search of the defendant. At trial, the deputy testified he intended to

admonish the defendant to stop causing a disturbance, but he did not intend to arrest him.

The deputy spotted the defendant a few blocks away from the duplex. The deputy did a U-turn and stopped his vehicle, which did not have its emergency lights activated. He advised dispatch of his location and activated his body-worn camera. He then opened the driver-side door of his vehicle, called out the defendant's name, and told the defendant to take his hands out of his pockets.

As the deputy exited his vehicle, the defendant rushed the deputy and struck him using his fists and a knife. The deputy fought back, drew his firearm, and stated, "I'm going to fucking shoot you, man." Because he didn't realize the defendant was armed, the deputy attempted to re-holster his gun but accidentally dropped it instead. The defendant said, "Oh, you fucked up," and reached for the firearm. The deputy struck the defendant on the back of the head with a baton. Unfazed, the defendant said, "Oh, you're going to die, motherfucker," and grabbed the firearm. The deputy fled for safety and heard two shots go off.

The deputy later returned to the scene of the attack and found that his vehicle and the defendant were missing. Law enforcement arrested the defendant a short time later.

The deputy suffered a broken jaw, broken bones, a neck injury, and a stab wound from his encounter with the defendant.

## B

### *Procedural Background*

After a trial, a jury found the defendant guilty of assault on a peace officer with a deadly weapon—namely, a knife (count 2); assault on a peace officer with a firearm (count 3); assault on a peace officer in a manner likely

4

to produce great bodily injury (count 4); making a criminal threat (count 5); possession of a firearm by a felon (count 6); and resisting an executive officer (count 7). For counts 2, 4, and 7, the jury found true allegations that the defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)), and for count 3, it found true an allegation that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). The jury also found the defendant not guilty of attempted murder (§§ 187, 664; count 1) and driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)(1); count 8).

The trial court found the defendant suffered two strikes within the meaning of the Three Strikes Law. It then imposed the following prison sentence for count 3: an indeterminate term of 39 years to life consecutive to a determinate term of 30 years. Although the information did not allege prior serious felony enhancements under section 667, subdivision (a), the court—based on its strike findings—included two five-year prior serious felony enhancements as part of the determinate term for count 3. It also included the prior serious felony enhancements when calculating the greatest minimum term for the indeterminate portion of the sentence.[2]

---

[2] "For a third strike defendant, the minimum term of the indeterminate life sentence is the greatest of three time periods. The first period (option one) is '[t]hree times the term otherwise provided as punishment' for the felony offense, not including enhancements. [Citations.] The second period (option two) is 25 years. [Citations.] The third period (option three) is '[t]he term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046.' " (*People v. Williams* (2004) 34 Cal.4th 397, 403.)

For count 3, the court found "option 3" produced the greatest minimum term and calculated the indeterminate term as follows: nine years for the assault on a peace officer conviction, plus 20 years for the firearm finding, plus five years for each of the two prior serious felony enhancements.

The trial court imposed and stayed execution of the sentence for the remaining counts under section 654.[3]

## III

## DISCUSSION

### A

### *Instructional Errors*

The defendant challenges his assault on a peace officer convictions based on two claims of instructional error. First, he asserts the trial court's instruction on the lawful performance of a peace officer (CALCRIM No. 2670) misled the jury into believing it could find him guilty of assault on a peace officer even if it found the deputy was not lawfully performing his duties at the time of the assault. Second, the defendant claims the trial court erred by not instructing the jury on lesser included offenses for the charges of assault on a peace officer. For reasons we will discuss, we conclude there is no merit to either of these contentions.

---

[3] The court calculated the stayed sentences for the remaining counts as follows: for count 2, 38 years to life consisting of 25 years to life under the Three Strikes Law, plus five years for each of the two prior serious felony enhancements, plus three years for the great bodily injury enhancement; for count 4, 38 years to life consisting of 25 years to life under the Three Strikes Law, plus five years for each of the two prior serious felony enhancements, plus three years for the great bodily injury enhancement; for count 5, 35 years to life consisting of 25 years to life under the Three Strikes Law, plus five years for each of the two prior serious felony enhancements; for count 6, the upper term of three years doubled under the Three Strikes Law; and for count 7, 38 years to life consisting of 25 years to life under the Three Strikes Law, plus five years for each of the two prior serious felony enhancements, plus three years for the great bodily injury enhancement.

## *CALCRIM No. 2670*

The defendant was found guilty of assault on a peace officer and resisting an executive officer.  Both offenses require the prosecution to prove beyond a reasonable doubt that the officer was lawfully performing his or her duties at the time of the assault or the resistance.  (§§ 69, subd. (a), 245, subds. (c), (d)(2); see *People v. Simons* (1996) 42 Cal.App.4th 1100, 1109, fn. 5.)  An officer does not lawfully perform his or her duties if the officer unlawfully detains or arrests a person or uses unreasonable or excessive force.  (See *People v. Delahoussaye* (1989) 213 Cal.App.3d 1, 7.)

The court instructed the jury on assault on a peace officer using CALCRIM No. 860.  That instruction states in relevant part as follows:  "To prove that the defendant is guilty of [the] crime, the People must prove that[ ] [¶] ... [¶] [ ] When the defendant acted, the person assaulted was lawfully performing his duties as a peace officer...."  The court instructed the jury on resisting an executive officer using CALCRIM No. 2652.  That instruction states in relevant part as follows:  "To prove that the defendant is guilty of [the] crime, the People must prove that[ ] [¶] ... [¶] [ ] When the defendant acted, the officer was performing his lawful duty...."

The court also instructed the jury with CALCRIM No. 2670, stating in part:  "The People have the burden of proving beyond a reasonable doubt that [the deputy] was lawfully performing his duties as a peace officer.  *If the People have not met this burden, you must find the defendant not guilty of Resisting an Executive officer as charged in Count 7*.  [¶] A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention.  [¶] ... [¶] If a

person knows, or reasonably should know, that a peace officer is arresting or detaining him or her, the person must not use force or any weapon to resist an officer's use of reasonable force."  (Italics added.)

The defendant does not dispute that CALCRIM No. 2670, as given, was correct with regards to the charge of resisting an executive officer (count 7). However, he asserts the instruction's reference to the charge of resisting an executive officer, coupled with its omission of any reference to the charges of assault on a peace officer (counts 2–4), misled the jury into believing it could find him guilty of assault on a peace officer even if it found the deputy was unlawfully performing his duties at the time of the assault.  Additionally, the defendant contends a person cannot be found guilty of assault on an officer if the person uses force during an unlawful arrest or detention, even though the person may be found guilty of resisting an officer under the same circumstances.  He claims CALCRIM No. 2670's prohibition against forcible resistance—while correct for purposes of the charge of resisting an officer— was misleading for purposes of the charge of assault on a peace officer.

We construe the defendant's argument as a claim that CALCRIM No. 2670 was incomplete or ambiguous due to its omission of any reference to the assault on a peace officer charges.  " '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901.)  Because CALCRIM No. 2670 was legally correct as given, and the defendant did not object to the instruction or request a clarifying instruction in the trial court, he has forfeited his challenge to the extent it is based on alleged omissions or ambiguities in the instruction.  (*Ibid.*; see also, e.g., *People v. Buenrostro* (2018) 6 Cal.5th 367, 428 (*Buenrostro*).)

The defendant's arguments fail on the merits as well. " ' "It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions." ' " (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361.) " 'When we review challenges to a jury instruction as being incorrect or incomplete, we evaluate the instructions as a whole, not in isolation. [Citation.] "For ambiguous instructions, the test is whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." ' " (*People v. Nelson* (2016) 1 Cal.5th 513, 544.)

As noted, CALCRIM No. 860 stated the jury could not find the defendant guilty of assault on a peace officer unless it found the deputy was lawfully performing his duties. CALCRIM No. 2670 defined lawful performance of duty for purpose of a different charge—the charge of resisting an officer. But CALCRIM No. 2670 did not mention, let alone delineate the substantive elements of, the offense of assault on a peace officer. Reading these instructions together, we conclude it is not reasonably likely the jury assumed, based on mere negative implication alone, and in disregard of the express terms of CALCRIM No. 860, that the deputy's lawful performance of his duties was *not* an element of the offense of assault on a peace officer. Because CALCRIM No. 2670 says nothing about the offense of assault on a peace officer, we similarly conclude it is not reasonably likely the jury misapplied the instruction's prohibition against forcible resistance in the manner described by the defendant.

Even if there was an instructional error, the error would be harmless beyond a reasonable doubt. We reach this conclusion for several reasons.

First, as previously noted, CALCRIM No. 860 instructed the jury it could find the defendant guilty of assault on a peace officer only if it found

9

the deputy was lawfully performing his duties.  We presume the jury followed the instruction.  (See *Buenrostro, supra*, 6 Cal.5th at p. 431.)

Second, there was not any evidence, let alone substantial evidence, that the deputy was *detaining* the defendant or that the purported detention was unlawful—i.e., that the deputy was not lawfully performing his duties.  "The usual test for a detention is whether a reasonable person would have believed he or she was free to leave."  (*People v. Fisher* (1995) 38 Cal.App.4th 338, 343.)  Here, the deputy parked his vehicle, called out the defendant's name, and told him to take his hands out of his pockets.  The deputy did not activate his vehicle's emergency lights, handcuff the defendant, question the defendant about the disturbance at the duplex, state the defendant was under arrest, or in any manner suggest the defendant was unable to leave.  Indeed, the defendant attacked the deputy before he could fully exit his vehicle.  On these facts, no reasonable juror could find the deputy detained the defendant.  (See *People v. Parrott* (2017) 10 Cal.App.5th 485, 494 [defendant was not detained when officers asked him to keep his hands out of his pockets]; *People v. King* (1977) 72 Cal.App.3d 346, 349 [defendant was not detained when officers called his name and told him to stop walking away].)

Further, substantial evidence did not support a theory that the deputy *unlawfully* detained the defendant.  Prior to the defendant's attack on the deputy, the deputy responded to a report of a disturbance.  The person who reported the incident stated someone from the adjoining unit was attempting to gain entry to her unit and, when the deputy arrived at the scene of the disturbance, the door between the two units was open.  At trial, the deputy testified he knew the defendant lived in the next-door unit from which the disturbance was emanating.  On these undisputed facts, the deputy surely harbored, at minimum, a reasonable suspicion that the defendant was

10

involved in criminal activity relating to the attempted break-in. Such reasonable suspicion would have justified the deputy's purported detention of the defendant, if in fact he had detained the defendant. (*People v. Leath* (2013) 217 Cal.App.4th 344, 354 [" ' "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." ' "].)

Third, the defense's closing arguments did not draw the jury's attention to the issue of whether the deputy was lawfully performing his duties. In fact, the defense expressly conceded to the trial court that it "didn't present any evidence as to [the encounter] not being in the performance of [the deputy's] lawful duties" and, therefore, the defense was "not arguing" that the deputy performed his duties unlawfully. Because the defense never argued that the deputy unlawfully detained the defendant, we have every reason to believe the jury would have reached the same verdict absent the alleged instructional error. (See *People v. Aranda* (2012) 55 Cal.4th 342, 375 [trial court's failure to provide standard reasonable doubt instruction was harmless "because neither the prosecutor nor defense counsel referred to the standard of proof during their closing remarks[] [and] nothing in their arguments invited the jury to apply a standard of proof less than beyond a reasonable doubt, or no standard at all"].)

Finally, the jury found the defendant guilty of resisting an officer after being fully and accurately instructed on the lawful performance of duty element for purposes of that charge. To find the defendant guilty of resisting an officer, the jury necessarily found the deputy was lawfully performing his duties; had the jury found that the alleged detention was unlawful, it would

11

have been obligated to acquit the defendant of the resisting an officer charge. Because the jury resolved the lawful performance of duty issue against the defendant, any alleged instructional error concerning lawful performance of duty for purposes of the assault on a peace officer charges was harmless. (See *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165 ["The error here is harmless beyond a reasonable doubt because the jury necessarily resolved these issues against appellants under other instructions."].)

2

*Lesser Included Offenses*

The defendant asserts the trial court also erred by failing to instruct the jury on lesser included offenses for each of the charges of assault on a peace officer. In particular, the defendant asserts the following lesser-included-offense instructions were warranted: for count 2, assault with a deadly weapon (§ 245, subd. (a)(1)); for count 3, assault with a semiautomatic firearm (*id.*, subd. (b)); and for count 4, assault by means of force likely to cause great bodily injury (*id.*, subd. (a)(4)). Unlike the offense of assault on a peace officer, these offenses do not require proof that the victim was a peace officer engaged in the performance of his or her duties. (§ 245, subds. (a)(1) & (4), (b).) According to the defendant, the court had a sua sponte duty to instruct on these offenses because a jury reasonably could have found that the deputy was not lawfully performing his duties.

The People concede assault with a deadly weapon, assault with a semiautomatic firearm, and assault by means of force likely to cause great bodily injury are lesser included offenses of assault on a peace officer, as charged. (See *People v. McElheny* (1982) 137 Cal.App.3d 396, 406 [assault with a deadly weapon is a lesser included offense of assault with a deadly weapon on a peace officer]; accord *People v. Ryan* (2006) 138 Cal.App.4th 360,

12

369, fn. 8 ["Section 245 is an example of a statute that contains greater and lesser included offenses in different subdivisions."].) However, they claim instructions on the lesser included offenses were unwarranted because there was no evidence the deputy unlawfully detained the defendant.

" ' "California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed. ... Thus, "a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." ' " (*People v. Kruse* (2020) 56 Cal.App.5th 1034, 1046.)

Assuming without deciding that assault with a deadly weapon, assault with a semiautomatic firearm, and assault by means of force likely to cause great bodily injury are or can be lesser included offenses of assault on a peace officer, we conclude there was no instructional error. As previously discussed, there was no substantial evidence to support the defendant's appellate argument that the deputy may have detained the defendant. Nor was there substantial evidence to support the defendant's appellate argument that the deputy may have lacked reasonable suspicion for the purported detention. In the absence of such evidence, the trial court was not required to instruct the jury on these lesser included offenses.

B

*Sentencing Errors*

For each count, the amended information alleged the defendant suffered two prior convictions for serious and/or violent felonies and, therefore, was "subject to sentencing pursuant to the provisions of Penal

13

Code section 667[, subs.] (b)–(j) and Penal Code section 1170.12." Thus, the information properly alleged the prior convictions were strikes for purposes of the Three Strikes Law. However, the information did not allege the prior convictions were prior serious felony convictions triggering five-year sentencing enhancements under section 667, subdivision (a).

The trial court found true the prior conviction allegations. It then used the true findings for three sentencing purposes. First, it treated the prior convictions as strikes, thereby triggering the indeterminate sentencing provisions of the Three Strikes Law. Second, it imposed two five-year prior serious felony conviction enhancements under section 667 subdivision (a) for counts 2, 3, 4, 5, and 7. Third, it included the prior serious felony conviction enhancements when calculating the minimum indeterminate term for count 3, effectively increasing the minimum indeterminate sentence by 10 years.

On appeal, the defendant challenges the court's imposition of the prior serious felony conviction enhancements under section 667, subdivision (a), as well as its use of those enhancements to calculate the minimum indeterminate term for count 3. He notes the amended information did not allege that the prior convictions were serious felony convictions under section 667, subdivision (a). He asserts the sentence therefore included unpled enhancements in violation of section 1170.1, subdivision (e), which states as follows: "All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

The People concede the amended information did not allege that the prior convictions were prior serious felony enhancements under section 667, subdivision (a). They urge us to strike the unpled enhancements accordingly.

14

We agree with the parties. The amended information did not give the defendant notice the People would seek to use his prior convictions as prior serious felony conviction enhancements under section 667, subdivision (a). Therefore, the trial court's imposition of prior serious felony conviction enhancements and its use of those enhancements to calculate the minimum indeterminate term violated section 1170.1, subdivision (e).[4] (*People v. Nguyen* (2017) 18 Cal.App.5th 260, 265–271 [court erred by imposing prior serious felony conviction enhancement where information alleged prior conviction as a strike, but not as a prior serious felony conviction under section 667, subdivision (a)]; accord *People v. Mancebo* (2002) 27 Cal.4th 735, 742–754 [error to sentence defendant to indeterminate term under One Strike Law based on unpled multiple-victim special circumstance].) Further, although the defendant did not object to the error in the trial court, we may correct the sentence on appeal because the statutory violation produced an unauthorized sentence. (*Nguyen*, at pp. 271–272.)

In light of the violation of section 1170.1, subdivision (e), we modify the judgment as follows: (1) the five-year prior serious felony conviction enhancements under section 667, subdivision (a) are stricken from the sentences for counts 2, 3, 4, 5, and 7; and (2) the indeterminate term for count three is reduced from 39 years to life to 29 years to life. As modified, the

---

[4]   Because we conclude the defendant's sentence violated section 1170.1, subdivision (e), we do not consider the defendant's argument that the sentence violated his constitutional right to due process.

15

prison sentence for count 3 is an indeterminate term of 29 years to life consecutive to a determinate term of 20 years.[5]

## IV

## DISPOSITION

The judgment is modified as follows: (1) the five-year prior serious felony conviction enhancements under section 667, subdivision (a) are stricken from the sentences for counts 2, 3, 4, 5, and 7; and (2) the indeterminate sentence for count 3 is modified from 39 years to life to 29 years to life. In all other respects, the judgment is affirmed. The clerk of the superior court is directed to modify the abstract of judgment to reflect this modification and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DATO, J.

---

[5]     As the parties agree, count 3 remains the controlling count and "option 3" produces the greatest minimum indeterminate term for count 3, even after the prior serious felony conviction enhancements are stricken.