Filed 7/8/25  P. v. Pacheco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100291 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE004190) |
| v. | |
| ROY DENNIS PACHECO, | |
| Defendant and Appellant. | |

Defendant Roy Dennis Pacheco and codefendant Monica Lopez carried out multiple armed robberies during a crime spree in March 2019.  On appeal from his subsequent convictions, Pacheco challenges:  (1) the sufficiency of evidence that his prior convictions qualified as "strike" offenses; (2) the sufficiency of evidence for three of his robbery convictions; (3) jury instructions; and (4) the correctness of his abstract of judgment.  We agree the abstract of judgment must be corrected, but otherwise affirm.

1

## LEGAL AND FACTUAL BACKGROUND

Pacheco and Lopez were each charged with 13 counts of second degree robbery for the armed robbery of six different business establishments. Pacheco was additionally charged with unlawful possession of a .38-caliber handgun pursuant to Penal Code section 29800, subdivision (a)(1).[1] The robberies all occurred on or between March 3, 2019, and March 6, 2019. Multiple people were inside three of the six businesses, resulting in multiple counts per each of those three establishments.

Pacheco and Lopez were tried together. Victims from three businesses testified that Pacheco entered the store unmasked before he committed the robbery. Pacheco wore a mask for the entirety of the robberies occurring at the other three locations. Lopez testified that she and Pacheco committed all six robberies, claiming Pacheco forced her to participate.[2] The jury saw surveillance video from the masked robberies. We provide greater details of the robbery of a Round Table Pizza, as it is relevant to multiple issues raised on appeal. Otherwise, we provide a summary of the other robberies for context, with more detail below as relevant to the discussion.

**Round Table Pizza**

At around 9:40 p.m. on March 3, Pacheco and Lopez entered a Round Table Pizza parlor and ordered a pizza. The parlor closed at 10:00 or 11:00 p.m. and at that time, two supervisors and two delivery drivers, including Christopher L. (count four), were present.

The two supervisors were at the front registers and only they had the codes necessary to open the registers. One supervisor, Kwanzaa M. (count three) took her drawer with cash to the back office and Pacheco followed her. Pacheco pointed a gun at her and ordered, "Give me the money." Kwanzaa dropped the drawer, fell to the ground,

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     We previously granted codefendant Lopez's request to dismiss her appeal.

and screamed.  Pacheco continued to hold Kwanzaa at gunpoint while she unloaded money from the office safe into a cardboard box.

Christopher and the other supervisor, Halie K., heard the scream and Christopher told Halie to stay put.  As Christopher approached the back office area, Pacheco turned the gun on him, threatening to kill him.  Christopher got down on the ground.

Halie saw Pacheco pointing a gun at Christopher.  She ran through two sets of swinging doors separated by a hallway to the kitchen area and told another employee. That employee told her to stay in the kitchen, and she did so.  Pacheco ordered the employee from the kitchen to give him the money from the second register.  That employee called out to Halie for the code and Halie stayed in the kitchen while she provided it, allowing him to open the register.  Pacheco took money from this second register before leaving.

**Piercing Studio**

Earlier that night, Pacheco and Lopez entered a body piercing studio where Hannah S. (count one) was working.  After discussing the possibility of obtaining a piercing, Pacheco pulled down his hat, which served as a ski mask, pulled out a gun, and threatened to "smoke" Hannah.  At Pacheco's direction, Lopez closed the window blinds and Hannah opened the cash register.  Pacheco took cash from the register, hit Hannah in the face with either the butt of the gun or his fist more than once, then took two of Hannah's bags containing personal items before leaving.

**Wienerschnitzel**

Around midnight on March 6, Pacheco was "scoping" out a Taco Bell, when he and Lopez saw that a nearby Wienerschnitzel employee left a back door open.  They entered the Wienerschnitzel through that door and encountered Claudia G. (count eight). Marlene M. (count seven) heard Claudia scream and saw a masked man holding a gun. Employee David C. (count nine) was at the front of the restaurant on his phone when he saw the masked gunman and heard him tell everyone to get down on the ground.  The

3

gunman asked the manager for money; the manager opened the cash register and David heard money being put into a bag.

**Donut Shop**

A couple of hours later, Pacheco and Lopez drove to a donut shop where Yadira N. (count ten) and Mayelin C. (count eleven) were working. At Pacheco's direction, Lopez entered the shop and asked for a dozen donuts. A masked man then came into the shop with a "small pistol" and Lopez dropped to the ground. The gunman demanded money from both Mayelin and Yadira; Yadira opened the register and gave him money. When the gunman left, Lopez was behind him.

**7-Eleven**

Roughly 30 minutes after leaving the donut shop, Pacheco and Lopez approached a 7-Eleven store. Shafiq M. (count twelve) was working when Lopez (at Pacheco's direction) entered and picked up a bag of chips to buy. Pacheco then entered wearing a mask, pointed a gun at Shafiq, and demanded money. Shafiq opened two registers and put money on the counter. The man ordered Lopez to get cigarettes from behind the counter, which she did. The gunman repeatedly threatened to kill Shafiq.

**Subway**

Around 10:00 a.m. on March 6, Lopez entered a Subway restaurant and ordered a sandwich. Pacheco then entered the restaurant, pulled on a mask, and pointed a gun at the employee, Farhan A. (count thirteen). Pacheco demanded that Farhan place money from the register into a bag. Farhan gave Pacheco access to the money then left the store and yelled for help. Pacheco exited the store, fired a shot into the air, and left.

A jury found Pacheco guilty of 13 counts of second degree robbery (§ 211; counts one-thirteen). As to each of these counts, the jury found true the allegation that Pacheco personally used a firearm (§ 12022.53, subd. (b)). As to count thirteen, the jury found true the allegation that Pacheco personally and intentionally discharged a firearm

4

(§ 12022.53, subd. (c)).  The jury also found Pacheco guilty of unlawfully possessing a firearm (§ 29800, subd. (a)(1); count fourteen).

In a bifurcated bench trial, the court found true the prosecution's additional allegations that Pacheco suffered two prior serious felony convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12).  The court sentenced Pacheco pursuant to the Three Strikes law, imposed firearm enhancements, and awarded credit for time spent in custody.

## DISCUSSION

## I

### *Proof of Prior Strike Offenses*

Pacheco first contends the prosecution failed to prove his two alleged prior convictions were (1) suffered by him and (2) constituted prior strike offenses under the Three Strikes Law.  We disagree.

A.  Oregon Federal Prior

At the court trial on the prior conviction allegations, the prosecution presented two exhibits to prove the convictions constituted strike offenses.  People's exhibit No. 67 contained documents pertaining to a 2010 federal conviction from Oregon.  The documents included the prosecution's request to obtain certified copies of records from the United States District Court in Oregon relating to "PACHECO, ROY DENNIS (DOB 03/13/1976 or 03/14/1976)  [¶] CASE #: 3:09-CR-00344-BR" and listed the date of conviction.  The exhibit also contained certified documents from the federal court pertaining to "ROY DENNIS PACHECO" with case No. CR 09-344-BR, including a copy of the indictment alleging "assault resulting in serious bodily injury" in violation of 18 United States Code section 113(a)(6).  In a signed petition to plead guilty to the charge, Roy Dennis Pacheco admitted that he "intentionally ~~wounded~~ *assaulted* the

5

victim" and "[a]s a result the victim suffered serious bodily injury."[3] The petition further stated that with respect to the charge, "I ~~represent that I did the~~ *agree the Govt. can prove* following acts*, and* ~~that~~ the following facts are true; *beyond a reasonable doubt.* [¶] On March 26, 2009 at the Sheridan FCI, in the District of Oregon, I intentionally ~~wounded~~ *assaulted* [the victim] by throwing hot coffee on his neck; [the victim] suffered serious bodily injury as a result. *I agree the court could find me guilty beyond a reasonable doubt*." The government's plea offer/agreement, signed by Roy Dennis Pacheco, set forth the elements of the crime and the defendant stipulated to the government's ability to prove certain facts including, that as a result of the defendant's "throwing hot coffee, which is a dangerous weapon, on [victim's] neck, [victim] suffered serious bodily injury, including second degree burns and extreme pain."

B. California Prior

People's exhibit No. 68 contained documents pertaining to a 2008 conviction for assault with a deadly weapon in Sacramento County. This included a certified copy of records from case No. 08F06721 against defendant "Roy Dennis Pacheco." In the complaint for that case, the prosecution charged the defendant with violating section 245, subdivision (a)(1) by willfully and unlawfully committing an assault "with a deadly weapon, to wit, a stabbing instrument, and by means of force likely to produce great bodily injury." The offense was alleged "to be a serious felony within the meaning of Penal Code section 1192.7(c)(23) in that defendant(s) personally used a dangerous and deadly weapon" and that the defendant committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The abstract of judgment for case No. 08F06721 indicates the defendant pled guilty to count one, section 245, subdivision (a)(1) and admitted to violating section 186.22, subdivision (b)(1)(b). The abstract of judgment lists

**3**    The language struck was replaced by handwritten additions which are indicated through use of italics.

6

Pacheco's full name, date of birth, and cross-reference number—all of which are the same as listed for Pacheco in the instant case.

As to whether these prior convictions constituted prior strikes, both the prosecutor and defense simply submitted on the prosecution's exhibits. The court found "true the allegations of the prior convictions and strike status from the Information."

C. Analysis

Under the Three Strikes law, a prior conviction for a strike offense subjects a defendant to increased punishment. (§§ 667, subd. (b), 1170.12, subd. (a).) The prosecution has the burden to prove both that the offense committed qualifies as a serious felony in California and that the defendant is the person described in the records of the prior conviction beyond a reasonable doubt. (§ 1025, subds. (b) & (c); *People v. Epps* (2001) 25 Cal.4th 19, 23, 25; *In re Yurko* (1974) 10 Cal.3d 857, 862.) The prosecution may meet this burden by introducing into evidence several types of evidence: certified copies of prison records pursuant to section 969b, certified copies of minute orders, or a certified copy of the abstract of judgment, among other documents. (*People v. Brucker* (1983) 148 Cal.App.3d 230, 241; see also § 969b [certified records of a conviction are admissible for the purpose of establishing prima facie evidence of a prior conviction].)

In determining whether there was sufficient evidence to support a finding that a prior conviction constituted a serious felony and thus a prior strike, we review the record in the light most favorable to the judgment to determine whether it is supported by substantial evidence. (*People v. Miles* (2008) 43 Cal.4th 1074, 1083.) We determine whether "a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Ibid.*)

1. Evidence of Identity

"[T]he question of whether the defendant is the person who has suffered the prior conviction shall be tried by the court without a jury." (§ 1025, subd. (c); cf. *People v. Kelii* (1999) 21 Cal.4th 452, 458-459 [jury's role limited to determining whether

documents of conviction are authentic and sufficient to establish conviction alleged].)  "It has long also been the rule in California, in the absence of countervailing evidence, that *identity of person may be presumed, or inferred, from identity of name*."  (*People v. Mendoza* (1986) 183 Cal.App.3d 390, 401.)  This means that when the name of the defendant is similar in spelling or sound to the name of a defendant in a prior action and when documents from the prior action are submitted as proof of the current defendant's prior conviction, a rebuttable presumption of identity exists.  (See *ibid*. [sufficient evidence the defendant was person who suffered prior convictions where first and last names were the same, even though middle names spelled differently].)  Because this is a rebuttable permissive presumption, contrary to Pacheco's claim, it does not automatically and impermissibly shift the burden of proof to him.  (See *People v. Saez* (2015) 237 Cal.App.4th 1177, 1190 [identity of person *may* be presumed from identity of name unless the defendant produces countervailing evidence]; see also *People v. Beltran* (2007) 157 Cal.App.4th 235, 244-245 [discussing that generally permissive inferences do not improperly shift the prosecution's burden of proving guilt beyond a reasonable doubt].)

Here, Pacheco contends that the prosecution relied exclusively on the fact that the person listed in the two prior convictions shared his name and presented no actual evidence that he is the same person.  He argues that because his name is common, there can be no presumption that a matching name establishes identity.  (See *People v. Luckett* (1969) 1 Cal.App.3d 248, 253 [presumption does not apply when the name is common]; *People v. Wong Sang Lung* (1906) 3 Cal.App. 221, 224-225 [same].)

Pacheco relies on several decisions from intermediate federal courts in support of his argument.  For example, in *U.S. v. Jackson* (2d Cir. 2004) 368 F.3d 59 the court held that evidence that one "Aaron Jackson" had been convicted of a felony almost 20 years earlier was insufficient to prove that the defendant Aaron L. Jackson was a felon.  (*Id*. at pp. 63-73; see also *U.S. v. Allen* (7th Cir. 2004) 383 F.3d 644, 647 [insufficient proof where, other than the name "David L. Allen," no information connected the prior

conviction to the defendant]; *U.S. v. Riley* (D.Md. 2014) 21 F.Supp.3d 540, 545 [insufficient evidence where the proof of identity was confined to an imperfect match between the name on the docket sheet and that of the defendant].) As a decision of an intermediate federal court, these cases are not binding on us. (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587-1588.) Moreover, as the courts in *Jackson* and *Allen* frankly acknowledged, the federal courts are split on whether proof of the prior conviction is satisfied solely by use of the defendant's name. (*Jackson*, at pp. 69-71; *Allen*, at p. 648.)

Even if we were to follow the federal cases, the facts here are distinguishable. First, we are not persuaded that Pacheco's full name is so common as to render inapplicable the presumption of identity. Indeed, the use of the same first, middle, and last names together provide strong evidence that Pacheco is the same individual as the person named in the prior conviction and, in the absence of countervailing evidence offered by Pacheco, supports the trial court's finding of identity. Nevertheless, the record provides greater specificity for each conviction than mere reliance on Pacheco's name. As discussed below, the documents link Pacheco to the prior convictions through birth date, case number, conviction date, and through a unique identification number. Accordingly, we need not address Pacheco's contention that the prosecution should be required to provide evidence of statistical rarity of a defendant's name prior to applying any presumption of identity.

As to Pacheco's 2008 prior California conviction, the abstract of judgment pertained to a person with the same first, middle and last name, date of birth, and cross-reference number[4] as Pacheco here. Thus, even if we accept Pacheco's premise that his

---

[4]     This is a unique identifying number generated by the sheriff's department that must be included on charging documents and is also associated with the "booking number" on the abstract of judgment. (See Super. Ct. Sac. County, Local Rules, rule 10.0(B)(3); Judicial Council Forms, form CR-290.)

9

name is common, the entirety of the information provided here constitutes substantial evidence that Pacheco is the person who suffered the 2008 prior conviction. (See *People v. Saez, supra*, 237 Cal.App.4th at p. 1190 [identical birth dates and street of residence is highly significant].)

We reach the same conclusion as to the 2010 federal conviction. For that conviction, the prosecutor requested records pertaining to the federal conviction that included specific information about the federal conviction, which served to narrow the appropriate candidates. The request included the offender's first, middle and last name, a specific case number, date of conviction, and noted that the offender's date of birth was either the same date as, or the day after, the one associated with Pacheco. The documents produced in response to this tailored request demonstrate that a person with the same full name as Pacheco was convicted under the requested case number with the previously identified date of conviction. This is substantial evidence that Pacheco suffered the 2010 federal prior conviction.

### 2. Prior Convictions as Strike Offenses

Both section 667 and section 1170.12 provide that "[any] offense defined . . . in subdivision (c) of [s]ection 1192.7 as a serious felony" qualifies as a prior strike. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) To determine whether a prior conviction from another jurisdiction qualifies as a strike under the Three Strikes law, a "court must conduct the inquiry 'with a focus on the elements of the offense of which the defendant was convicted.' " (*People v. Gallardo* (2017) 4 Cal.5th 120, 129.) The court may also rely on facts that "the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Id*. at p. 136.) But the sentencing court cannot make " 'a disputed determination about "what the defendant and state judge must have understood as the factual basis of the prior plea." ' " (*Id*. at pp. 133-134.)

10

Here, the parties apparently agree that the elements of both prior convictions do not directly correspond to a strike offense under California law.  The parties disagree, however, as to whether the facts necessarily proven by the conviction constitute a strike offense.  Pertinent to this case, crimes are " 'serious' " when they are felonies and "the defendant personally inflicts great bodily injury on any person, other than an accomplice" (§ 1192.7, subd. (c)(8)), or "the defendant personally used a dangerous or deadly weapon" (*id.*, subd. (c)(23)), or the defendant commits any felony offense, which would also constitute a felony violation of section 186.22 (§ 1192.7, subd. (c)(28)), or commits an assault with a deadly weapon in violation of section 245 (§ 1192.7, subd. (c)(31)).

### a.   Prior Federal Conviction

Pacheco was convicted under federal law of committing an assault with serious bodily injury.  The elements of that offense are:  (1) an assault, and (2) resulting serious bodily injury.  (18 U.S.C. § 113(a)(6); *U.S. v. Plume* (8th Cir. 2024) 110 F.4th 1130, 1135-1136.)  By operation of law, Pacheco's federal guilty plea admitted the essential elements of the offense.  (*U.S. v. Robinson* (7th Cir. 2020) 964 F.3d 632, 640; *People v. Hoffard* (1995) 10 Cal.4th 1170, 1177.)  But Pacheco contends that he admitted nothing more than the essential elements; the federal plea was pursuant to *North Carolina v. Alford* (1970) 400 U.S. 25, 37, wherein he only agreed the prosecution could prove the factual basis for the plea but did not admit to any additional facts.  The People do not address whether the plea was pursuant to *Alford*.  We are not persuaded.

"An *Alford* plea is a plea of guilty in which the defendant maintains his innocence." (*U.S. v. Mancinas-Flores* (9th Cir. 2009) 588 F.3d 677, 681, citing *North Carolina v. Alford, supra*, 400 U.S. at p. 36.)  Where a defendant states his or her understanding of the evidence the state would introduce at trial, but does not claim innocence anywhere in the plea, federal courts have determined that *Alford* does not apply.  (See, e.g., *Eggers v. Warden, Lebanon Corr. Inst.* (6th Cir. 2016) 826 F.3d 873, 876 [*Alford* "kicks in only if a defendant 'protests his innocence' during the plea

11

colloquy"]; *Loftis v. Almager* (9th Cir. 2012) 704 F.3d 645, 650-651 [because the defendant made no statements claiming innocence or otherwise calling into question the voluntariness of his plea, *Alford* did not apply]; *Foote v. Ward* (10th Cir. 2006) 207 Fed.Appx. 927, 930 [as the defendant did not claim innocence anywhere in the plea, he did not receive the added protection of *Alford*].)

In this case, when petitioning to plead guilty, Pacheco agreed, "*the Govt. can prove* following acts*, and* ~~that~~ the following facts are true; *beyond a reasonable doubt.* [¶] . . . I intentionally ~~wounded~~ *assaulted* [the victim] by throwing hot coffee on his neck; [the victim] suffered serious bodily injury as a result. *I agree the court could find me guilty beyond a reasonable doubt.*" This language contains Pacheco's admission that the facts relating to the factual basis "are true." (See *U.S. v. Paulette* (7th Cir. 2017) 858 F.3d 1055, 1060 [a defendant may admit far more than the elements of a charged crime during the plea colloquy].) In addition, in the plea agreement he signed, he stipulated that the government could prove beyond a reasonable doubt that he threw hot coffee on the victim's neck and, "[a]s a result of defendant throwing hot coffee, which is a dangerous weapon, . . . [the victim] suffered serious bodily injury, including second degree burns and extreme physical pain." We see no claim of innocence or reference to *Alford* in any of his plea documents.

This case is distinguishable from *People v. Roberts* (2011) 195 Cal.App.4th 1106, a case cited by Pacheco. In *Roberts*, the appellate court considered whether the record of conviction following a guilty plea from a foreign jurisdiction established a conviction for a strike offense. There, the defendant presented a plea form from his prior conviction indicating he did not believe he was guilty but elected to so plead, referencing *Alford*. (*Id.* at p. 1121.) The appellate court noted that the court that accepted the plea clarified that under *Alford*, the plea did not involve admission of a factual basis for the charged offense and the defendant entered his plea before the prosecutor provided the factual basis. (*Id.* at pp. 1122-1123.) The appellate court then concluded that, in light of the

references to *Alford* in the plea form and colloquy and the understanding that defendant was not admitting his guilt or the factual basis, the defendant's subsequent failure to deny the prosecutor's alleged facts supporting the prior conviction was not an adoptive admission of those facts for purposes of future use as a strike offense. (*Ibid.*) Here, in contrast, the federal documents do not include Pacheco's claim of innocence or refusal to admit guilt or the factual basis, never reference *Alford* and instead contain Pacheco's admission to additional facts in his petition to plead guilty. Thus, we may consider those additional facts admitted by Pacheco in his federal plea. (See *People v. Gallardo, supra*, 4 Cal.5th at p. 136 [court may consider facts the defendant admitted as the factual basis for a guilty plea].)

The People defend the court's determination that this prior conviction constitutes a strike offense, arguing it qualifies as such under section 1192.7, subdivision (c)(8) (personally inflicts great bodily injury) and (c)(23) (personally uses a dangerous weapon). Because we conclude his prior conviction qualifies as a strike under subdivision (c)(23), we need not address the remaining arguments.

Title 18, United States Code section 113(a) criminalizes eight variations of assault, including assault with a dangerous weapon resulting in serious bodily injury. (18 U.S.C. § 113(a)(6).) Under California law, " '[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' " (*People v. Robins* (2020) 44 Cal.App.5th 413, 420, quoting § 240.) An assault may be a serious felony under section 1192.7, subdivision (c)(23) only if a deadly or dangerous weapon is personally used by the defendant. (*People v. Williams* (1996) 50 Cal.App.4th 1405, 1411-1412.) Federal courts have defined "dangerous weapon" within the meaning of 18 United States Code section 113 as either " 'inherently dangerous' " or otherwise " ' 'used in a manner likely to endanger life or inflict great bodily harm.' ' " (*U.S. v. Smith* (9th Cir. 2009) 561 F.3d 934, 939.) Similarly, under California law, " 'a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be

13

capable of producing and likely to produce, death or great bodily injury." ' " (*People v. Aledamat* (2019) 8 Cal.5th 1, 6, citing § 245.) Second degree burns may constitute great bodily injury. (See *People v. Harvey* (1992) 7 Cal.App.4th 823, 827 [blistering second degree burns constituted great bodily injury].)

Here, Pacheco admitted that he assaulted the victim by throwing hot coffee on the victim's neck, causing second degree burns. These admitted facts demonstrate that he committed an assault under California law by attempting (with the present ability) to commit a violent injury on the victim. He also admitted he used a dangerous weapon for federal law purposes, which has the same definition as under California law. Finally, he admitted his actions caused the victim to suffer second degree burns, which establishes the hot coffee factually qualified as a weapon capable of producing and likely to produce great bodily injury. In short, Pacheco's federal plea documents necessarily establish he admitted the elements of a serious felony for strike purposes under California law.

### b. Prior State Conviction

Because we conclude Pacheco's prior state conviction satisfies subdivision (c)(31) of section 1192.7, we need not address whether Pacheco's prior state conviction qualified as a strike under subdivision (c)(23)[5] or (c)(28).

Former section 245, subdivision (a)(1), as it existed at the time of Pacheco's conviction in 2008, proscribed assault upon the person of another alternatively as either with a deadly weapon or instrument other than a firearm, or by any means of force likely to produce great bodily injury.[6] The parties agree that under section 1192.7, subdivision

---

[5] Although we note that the People concede there is no evidence that Pacheco used a deadly weapon against a nonaccomplice and, thus, his prior conviction does not qualify as a strike under subdivision (c)(23) of section 1192.7.

[6] The current version of section 245 splits the two versions of aggravated assault between two subdivisions. (§ 245, subd. (a)(1) & (4).)

(c)(31),[7] assault with a deadly weapon qualifies as a serious felony under the Three Strikes law, but assault by means of force likely to produce great bodily injury does not. (See *People v. Hudson* (2018) 28 Cal.App.5th 196, 203; *People v. Banuelos* (2005) 130 Cal.App.4th 601, 605 ["a conviction of assault by means likely to cause great bodily injury is not a serious felony unless it also involves the use of a deadly weapon or actually results in the personal infliction of great bodily injury"].) They disagree, however, as to whether the facts underlying the conviction necessarily renders it a prior strike offense.

Count one of the information from the prior conviction charged the defendant with violating section 245, subdivision (a)(1) not in the alternative, but cumulatively with "assault . . . with a deadly weapon . . . *and* by means of force likely to produce great bodily injury." (Italics added.) Use of the conjunctive "and" in count one reflects an intent to charge Pacheco with both forms of assault as defined in section 245, subdivision (a)(1) and Pacheco's plea of guilty to that count is effectively a plea to both, bringing Pacheco's prior conviction within the purview of section 1192.7, subdivision (c)(31). (Cf. *People v. Gallardo, supra*, 4 Cal.5th at pp. 135-136 [where information alleged the defendant suffered a conviction for "assault with a deadly weapon or with force likely to produce great bodily injury," proof of prior strike insufficient].)

We find *People v. Mendias* (1993) 17 Cal.App.4th 195, analogous and instructive here. In that case, the prosecution established that by pleading guilty to an information alleging he had committed robbery " 'by force *and* fear,' " the defendant committed robbery "involving the use of force" for purposes of section 667.7, subdivision (a). (*Mendias*, at p. 204.) The *Mendias* court rejected the notion that the guilty plea admitted

---

**7** Pacheco cites to section 1192.7, subdivision (c)(32), which applies only to assault with deadly weapons against designated persons. We believe Pacheco meant to cite to section 1192.7, subdivision (c)(31) and thus we address that specific subdivision.

only the minimum requirement of the offense, concluding instead that the guilty plea admitted not only every element of the offense charged, but also all allegations and factors comprising the charge contained in the pleading. (*Ibid*.) The same conclusion is warranted here. As in *Mendias*, we conclude Pacheco's admission here forecloses his failure of proof argument.

## II

### *Sufficiency of the Evidence*

Robbery involves in part, the taking of property in the possession of another. "California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery." (*People v. Jones* (2000) 82 Cal.App.4th 485, 490.) Pacheco contends three of his robbery convictions must be reversed because there is insufficient evidence that the identified employees were actually on duty at the time of the robberies. We disagree and conclude there is substantial evidence that they had constructive possession of their employer's property.

A. Additional Background

As previously mentioned, Christopher L. was a pizza delivery driver. Christopher testified that at the time of the robbery, he was working, but he explained that it was "pretty much dead," and drivers were not in high demand. He said, "I was supposed to be off at that point. . . . I was trying to make some food and get out of there." Remaining at the restaurant also provided a "chance for [him] to hang out with [his] co-workers, chat." When Pacheco and Lopez came in, Christopher was getting ready to get his food ready to put in the oven, but he remained because once Pacheco and Lopez entered the restaurant, he had a bad feeling about them.

16

Three nights later, employees were cleaning a closed fast-food restaurant when Claudia G.**8** (count eight), who was working as a cook that night, went outside to discard something and left the back door open. Lopez was near the dumpster of the restaurant, and she and Pacheco entered the restaurant through the open door. Pacheco pointed a gun at all the employees and ordered them to get on the ground. At Pacheco's direction, the manager opened a cash register and transferred money from the drawer into a bag for Pacheco.

At the time of that robbery, employee David C. (count nine), was taking a break and was in the front of the store, watching videos on his phone, when he saw a man with a gun come in and tell everyone to get on the ground. Pacheco and Lopez fled with the money a little after midnight. David explained the shift would have ended around 1:00 a.m.

B. Analysis

In reviewing a claim of insufficient evidence, we determine " ' "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.] We examine the record to determine "whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] Further, "the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citations.]" (*People v. Moon* (2005) 37 Cal.4th 1, 22.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The element of possession under the robbery statute can be

---

**8**     Claudia mostly spoke Spanish and did not testify at trial. This evidence was relayed by another employee present that night.

established in multiple ways. Possession or direct physical control over an object will suffice but neither is essential. (*People v. Wilson* (2021) 11 Cal.5th 259, 302.) Constructive possession by an employee is also sufficient to establish the element. (*People v. Scott* (2009) 45 Cal.4th 743, 749-750.) In *Scott*, the California Supreme Court explained that "because anyone committing robbery in a business establishment would perceive an employee as capable of resisting, 'all on-duty employees have constructive possession of their employer's property during a robbery.' " (*Wilson*, at p. 302, quoting *Scott*, at p. 755.)

Relying on *Scott*, Pacheco contends insufficient evidence supports his convictions for the robbery of Christopher, David, or Claudia because there was insufficient evidence that they were *on duty* during the robbery. First, he contends that because Claudia did not testify, there is no proof she was working or not on a break at the time of the robberies. We disagree. Another employee testified that Claudia worked as a cook on the night of the robbery and the employees were busy cleaning after the restaurant had closed to the public when the robbery occurred. Lopez testified that one of the employees came out of the back door to throw something away and left the door open. An employee testified it was Claudia who used that door and did not secure it upon returning. Thus, it is reasonable to infer that Claudia was working when the robbery occurred. Viewing the evidence in the light most favorable to the judgment, a reasonable jury could find that Claudia was still on duty and had constructive possession of her employer's property at the time of the robbery. (*People v. Scott, supra*, 45 Cal.4th at pp. 752-755.)

Pacheco further argues that neither Christopher nor David was on duty at the time of the robberies and that because they were engaged in personal activities, they were not in possession of the business's property that was taken. We reject Pacheco's contention that only *on duty* employees may have constructive possession in the context of a robbery of a business. Constructive possession requires only "that there be some type of 'special relationship' with the owner of the property sufficient to demonstrate that the victim had

18

authority or responsibility to protect the stolen property on behalf of the owner." (*People v. Scott, supra*, 45 Cal.4th at p. 753.)  Thus, even assuming Christopher, David, and/or Claudia were not physically working at the time of the robbery, this does not necessarily mean they lost their "special relationship" or constructive possession status within the meaning of *Scott*.

*Scott* explained that its construction of the robbery statute, "is consistent with the culpability level of the offender and the harm done by his or her criminal conduct.  As a matter of common knowledge and experience, those who commit robberies are likely to regard all employees as potential sources of resistance, and their use of threats and force against those employees is not likely to turn on fine distinctions regarding a particular employee's actual or implied authority." (*People v. Scott, supra*, 45 Cal.4th at p. 753.) "Constructive possession depends upon a special relationship with the owner of the property, not upon the motives of a person seeking to recover possession from a thief or burglar." (*Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, 484.)  "[B]usiness employees—whatever their function—have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner." (*People v. Jones, supra*, 82 Cal.App.4th at p. 491.)  In fact, the relationship between employee and the stolen property's owners (i.e., master) is acknowledged in Civil Code section 50.[9] (*People v. Scott, supra*, 45 Cal.4th at p. 754.)  Thus, it is "the employee's relationship with his or her employer [that] constitutes a 'special relationship' sufficient to establish the employee's constructive possession of the employer's property during a robbery," not necessarily the timing of the employee's shift.  (*Ibid*.)

---

[9]      Civil Code section 50 states, "Any necessary force may be used to protect from wrongful injury the person or property of oneself, or of a spouse, child, parent, or other relative, or member of one's family, or of a ward, servant, master, or guest."

Indeed, persons other than employees may be robbery victims if they have a "special relationship" with the owner of the property and may be expected to resist the taking. (*People v. McKinnon* (2011) 52 Cal.4th 610, 687.) For example, a visitor to a store who was forced to remove and surrender money from the store's cash box has been held to be a robbery victim. (*People v. Moore* (1970) 4 Cal.App.3d 668, 670-671.) Courts have also recognized the necessary special relationship for robbery in nonbusiness contexts. (See, e.g., *People v. Bekele* (1995) 33 Cal.App.4th 1457, 1462 [coworker who the owner asked to help stop the theft of owner's property], disapproved on another ground in *People v. Rodriguez* (1999) 20 Cal.4th 1, 13-14; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 499 [the car owner's mother who had helped her son buy the car, had access to the car's keys, had driven the car, and was named on the insurance policy]; *People v. Gordon* (1982) 136 Cal.App.3d 519, 528-529 [parents].) Thus, case law instructs that the special relationship that gives rise to constructive possession is not as limited as Pacheco contends. As stated in *Scott*, "[b]ecause robbery is an offense of violence against the person, the number of counts is limited by the number of persons against whom force or fear is used to remove the property. We see no justification for further limiting the offense by adopting a restrictive interpretation of the element of possession." (*People v. Scott, supra*, 45 Cal.4th at p. 757.)

Here, David, Christopher, and Claudia were employees at their respective employer's business at the time of the robbery under circumstances related to their employment obligations. Statutorily, the employees had the authority to protect the stolen property, and thus had constructive possession of it. (*People v. Hutchinson* (2018) 20 Cal.App.5th 539, 547-548; Civ. Code, § 50.) Pacheco used his gun to threaten each of them in order to prevent them from interfering with the crime's commission. These circumstances provide sufficient to establish their status as a victim of the robbery.

## III

### *Jury Instructions*

Pacheco contends that the trial court prejudicially erred by modifying two jury instructions. First, he contends a modified version of CALCRIM No. 376 created an unconstitutional presumption of guilt for all counts and lightened the prosecution's burden of proof. He further contends the court erred in providing a broader definition of the term "immediate presence" than provided in the optional bracketed language in CALCRIM No. 1600 such that it impermissibly allowed the jury to consider an employee was a victim of the robbery when she hid in a different area of the restaurant when money was taken.

"Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court." (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.) Pacheco's claim, however, is that the instructions are not correct in law. This type of claim need not be preserved by objection before an appellate court can address the issue. (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7.) "Our task is to determine whether the trial court ' "fully and fairly instructed on the applicable law." ' [Citation.] We consider the instructions as a whole as well as the entire record of trial, including the arguments of counsel. [Citation.] If reasonably possible, instructions are interpreted to support the judgment rather than defeat it." (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.) We independently review the legal adequacy of a jury instruction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)

### A. CALCRIM No. 376

#### 1. Additional Background

Law enforcement arrested Pacheco almost eight hours after the last of the four robberies was committed that day. An officer found two stacks of cash wrapped in rubber bands, both about one-inch thick and described as a "significant quantity" of money in the front of Pacheco's sweatshirt. Officers searched Pacheco's car and found the

21

following: multiple cigarette packs, a methamphetamine pipe, 16 boxes of Swisher cigars, various coin rolls and torn coin roll wrappers, multiple cell phones, a ski mask, and a loaded firearm.

The 7-Eleven clerk testified that Lopez filled a bag with cigarettes taken from behind the counter of his shop during the robbery and he confirmed the cigarettes found in the car were the same brands as those sold in his store. The Round Table manager testified that rolled coins were included in the loot stolen from the office safe. Pacheco and Lopez took cash from every business.

The trial court instructed the jury with CALCRIM No. 376 as follows: "If you conclude that a defendant knew he or she possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of Counts 1-13 based on those facts alone. However, if you also find that supporting evidence tends to prove his or her guilt, then you may conclude that the evidence is sufficient to prove he or she committed Counts 1-13. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his or her guilt of Counts 1-13. [¶] Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." Pacheco did not object to this instruction.

The court also instructed the jury with CALCRIM No. 200, which provides, in relevant part: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

22

## 2. Analysis

CALCRIM No. 376 allowed the jury to infer Pacheco was guilty of robbery from the fact that he knowingly possessed property that had been recently stolen, only if there was at least slight supporting evidence tending to prove guilt. Such an instruction contains a permissive inference. But according to Pacheco, CALCRIM No. 376 may only be given if Pacheco possessed property specifically identified from each robbery with which he is charged; a condition not met here. He argues that while the cigarettes and rolls of coins could have been stolen in one or two of the robberies, they were not specifically identified as stolen, and neither was the cash found in his possession. He further contends the modification to CALCRIM No. 376 violated due process because it permitted the jury to make an irrational permissive inference of guilt on *all* counts from his possession of stolen property from one or two thefts and by reducing the burden of proof when it told the jury that possession of recently stolen property along with "slight supporting evidence" is "sufficient to prove" he committed all 13 robberies.

### a. Linking the property to the charge

Pacheco contends CALCRIM No. 376 is inherently an incorrect statement of law because it fails to require a link between the property and the charged theft offense. He contends the error is exacerbated because, as modified to apply to all 13 robbery charges here, it allows the jury to find him guilty of charges unrelated to the property found in his possession.

A similar argument was rejected in *People v. Lopez* (2011) 198 Cal.App.4th 698, 709. In that case, the defendant was charged with multiple counts of theft-related offenses against different victims. The trial court similarly instructed the jury with CALCRIM No. 376. On appeal, the defendant argued the instruction permitted the jury to infer guilt of the charged burglary if it found he was in possession of recently stolen property regardless of whether or not it was a product of that burglary and also found slight corroborating evidence of the burglary. (*Lopez*, at pp. 707-708.) The defendant

23

further contended that "the instruction created a substantial risk that [he] would be convicted of the burglary based on evidence from other crimes, which, he argues, is, in effect, that he had a propensity to steal." (*Id.* at p. 709.) The *Lopez* court rejected that argument, reasoning: "[I]n substance, CALCRIM No. 376 cautions the jury *against* inferring guilt based solely upon a defendant's conscious possession of recently stolen goods. It would be unreasonable and illogical for the jury to construe this instruction to also *permit* it to infer guilt on a *burglary charge*, because a defendant possessed property stolen during a *completely different theft*. ' "We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions." ' " (*Id*. at p. 710.) We find the reasoning in *Lopez* applicable here.

In addition, to the extent Pacheco argues that the instructions were unclear and created confusion as to how to apply the inference of guilt from his possession of stolen property, we perceive no reasonable likelihood that the jury misunderstood or misapplied CALCRIM No. 376. (See *People v. Smithey, supra*, 20 Cal.4th at p. 963; *Estelle v. McGuire* (1991) 502 U.S. 62, 72 & fn. 4.) The correctness of jury instructions is to be determined from the instructions as a whole. (*Smithey*, at p. 963.) "The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

Here, the jury was separately instructed on the elements of robbery and was also instructed that, "[e]ach of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." The prosecution theory was that Pacheco robbed several business establishments with the use of a gun and that his identity as the robber was established through witness identification and video surveillance. This theory did not depend in any way on his possession of stolen property. Indeed, the prosecutor only mentioned stolen property once in her closing argument, when she addressed different factors that supported the conclusion that

24

Pacheco robbed the 7-Eleven convenience store, such as the fact that the same brand of cigarettes that were stolen "ends up in that car.  [¶]  So, you have freshly stolen property located with Mr. Pacheco when he is arrested.  It's additional information that lets you know we are talking about Mr. Pacheco."  The prosecutor's closing arguments clarified the theory that Pacheco's possession of recently stolen cigarettes from the convenience store, coupled with other corroborating evidence, constituted circumstantial evidence that Pacheco robbed that store.  There is nothing in the record to suggest that the jury viewed CALCRIM No. 376 as an invitation to mix and match the evidence, essentially borrowing evidence of one crime to infer guilt of another.  Accordingly, we reject this part of Pacheco's challenge to the giving of CALCRIM No. 376.

b.  Due Process

CALCRIM No. 376's materially similar predecessor CALJIC No. 2.15 has been repeatedly upheld against similar due process attacks.  (*People v. Gamache* (2010) 48 Cal.4th 347, 376 & cases cited [addressing CALJIC No. 2.15].)  However, Pacheco contends that CALCRIM No. 376 is different than CALJIC No. 2.15 because whereas CALJIC No. 2.15 requires corroborating evidence to create a permissible inference, CALCRIM No. 376 permits the jury to use inference and slight supporting evidence as "proof" of guilt, which is a lower burden than beyond a reasonable doubt.  Other appellate courts have upheld CALCRIM No. 376 against similar challenges.  (*People v. Lopez, supra*, 198 Cal.App.4th at p. 711 [addressing CALCRIM No. 376]; *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574-1575 & cases cited [same]; *People v. Solórzano* (2007) 153 Cal.App.4th 1026, 1035-1036 & cases cited [same].)

For example, in *Lopez*, the court found the holding in *People v. Snyder* (2003) 112 Cal.App.4th 1200 instructive:  "The inference permitted by CALJIC No. 2.15 is permissive, not mandatory.  Because a jury may accept or reject a permissive inference 'based on its evaluation of the evidence, [it] therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt.'  [Citation.]  Requiring only

25

'slight' corroborative evidence in support of a permissive inference, such as that created by possession of stolen property, does not change the prosecution's burden of proving every element of the offense, or otherwise violate the accuser's right to due process unless the conclusion suggested is not one that reason or common sense could justify in light of the proven facts before the jury. [Citations.]" (*Id.* at pp. 1226-1227.)

The *Lopez* court applied *Snyder*'s reasoning and determined that CALCRIM No. 376 similarly "makes it quite apparent that the 'slight' supporting evidence is not to be considered in isolation, but together with all of the other evidence for purposes of determining whether there is proof beyond a reasonable doubt that the defendant committed robbery." (*People v. Lopez, supra*, 198 Cal.App.4th at p. 711.) *Lopez* further noted that the instruction expressly requires the jury to be " 'convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt,' " and thus does nothing to diminish the prosecution's burden of proof. (*Ibid*, quoting CALCRIM No. 376; see also *People v. O'Dell, supra*, 153 Cal.App.4th at p. 1576 ["As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process"]; *People v. Solórzano, supra*, 153 Cal.App.4th at pp. 1035-1036 [concluding the case law is "settled" that the permissive inference in CALCRIM No. 376 "neither changes the prosecution's burden of proving every element of the offense nor otherwise violates the right to due process if, as here, the conclusion suggested is one that common sense and reason can justify 'in light of the proven facts before the jury' "].) We agree with this analysis and reject Pacheco's contentions.

Nevertheless, Pacheco insists that federal courts of appeals have reversed convictions where a trial court instructed a jury that "[o]nce the existence of the agreement or common scheme of conspiracy is shown, . . . slight evidence is all that is

required to connect a particular defendant with the conspiracy." (*U.S. v. Partin* (5th Cir. 1977) 552 F.2d 621, 628, italics omitted; see *U.S. v. Durrive* (7th Cir. 1990) 902 F.2d 1221, 1229, fn. 6.) The California Supreme Court has distinguished federal conspiracy cases concerning instructional error similar to the error in *Partin*. (*People v. Grimes* (2016) 1 Cal.5th 698, 731.) As applied to CALCRIM No. 376, these cases do not convince us that the "slight evidence" instruction being challenged in this case unconstitutionally reduced the prosecution's burden of proof. The "slight evidence" instruction at issue here is distinguishable because it permits the jury to draw a permissive inference of guilt in a theft-related case from the evidence of predicate facts (knowing possession of property proved to be recently stolen and at least slight, additional supporting evidence of guilt), provided the prosecution has proved every fact essential to a guilty verdict beyond a reasonable doubt.

Finally, Pacheco argues the instruction violated due process because it did not comport with *Ulster County Court v. Allen* (1979) 442 U.S. 140, which held that a permissive presumption does not "shift the burden of proof . . . [and] affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (*Id*. at p. 157.) Pacheco argues an inference that he was guilty of any of the robberies from the fact that he may have been in possession of some stolen property was not a rational inference. (See *Francis v. Franklin* (1985) 471 U.S. 307, 314-315 ["A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury"].)

We disagree. It was the jury's prerogative to assess the evidence to determine whether the property in Pacheco's possession was stolen. If, as Pacheco claims, there was insufficient evidence that he was in possession of stolen property, the permissive inference would not apply, and the jury was free to disregard the instruction. In this

27

regard, CALCRIM No. 200 guided the jury: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

If there was error, it was harmless. The California Supreme Court made clear in *People v. Gamache, supra*, 48 Cal.4th 347, that the proper harmless error test for this type of error is that articulated in *People v. Watson* (1956) 46 Cal.2d 818. (*Gamache*, at p. 376.) And as in *Gamache*, "[u]nder that test—whether it is reasonably probable [the defendant] would have obtained a more favorable result had the instruction not been given—the error here in extending [CALCRIM No. 376] to the murder charge was clearly harmless." (*Ibid.*) Here, aside from Pacheco's possession of the stacks of cash, the coin rolls, and the cigarettes, the evidence that Pacheco committed the robberies was overwhelming where victims from three of the robberies identified him, he was captured on video surveillance during the other three robberies, and Lopez admitted she and Pacheco committed the robberies.

B. CALCRIM No. 1600

1. Additional Background

Pursuant to CALCRIM No. 1600, the jury was instructed that robbery required proof of the following: (1) the defendant took property that was not his or her own; (2) the property was in the possession of another person; (3) the property was taken from the other person or his or her immediate presence; (4) the property was taken against that person's will; (5) the defendant used force or fear to take the property or to prevent the person from resisting; and (6) the defendant did so with the intent to permanently deprive the owner of the property.

At the prosecution's request, the jury was further instructed: "A thing is in the immediate presence of a person, in respect to robbery, that is so within his or her reach,

28

inspection, observation, or control, that he or she could, if not overcome by violence or prevented by fear, retain possession of it." The court and defense counsel both acknowledged that the requested definition had been approved by the courts, citing, inter alia, *People v. Harris* (1994) 9 Cal.4th 407, 423-424. Thus, defense counsel did not object to the requested instruction.

    2. Analysis

  Pacheco first contends the trial court erred in giving a definition of "immediate presence" because it has a commonsense definition. He notes that if the jury needed a definition of the term, CALCRIM No. 1600 provided such an option in brackets: "Property is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or fear." Pacheco contends that the use of the optional bracketed language would have allowed the jury to rely on a commonsense understanding of "immediate presence"— which he speculates to be that the victim must be present near the property at the time of the robbery. Instead, the modified definition required the property be "within [the victim's] reach, inspection, observation, or control," which Pacheco contends impermissibly broadened the meaning of "immediate presence" and erroneously allowed the jury to consider whether the named victim "was in a position where he or she, upon becoming aware of the robbery, could respond in time to prevent the taking." He asserts that prejudice from this erroneous instruction is demonstrated by the fact that he was convicted of robbing Halie at the pizza parlor despite the fact that she was not in the "immediate presence" of her register when Pacheco liberated its contents.

  Under the robbery statute, property is within the "immediate presence" of a victim if, but for the perpetrator's use of force or fear, the victim would have retained possession of it. (*People v. Abilez* (2007) 41 Cal.4th 472, 507.) "The generally accepted definition of immediate presence . . . is that ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that

29

he could, if not overcome by violence or prevented by fear, retain his possession of it." ' [Citations.] . . . [I]mmediate presence ' "must mean at least an area within which the victim could reasonably be expected to exercise some physical control over [the] property." ' [Citation.] Under this definition, property may be found to be in the victim's immediate presence 'even though it is located in another room of the house, or in another building on [the] premises.' [Citations.]" (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627.)

Pacheco acknowledges both that the above-cited definition of "immediate presence" is generally accepted and that the definition given in this case mirrors it. Nevertheless, Pacheco essentially argues that jurors should have been allowed to consider their own personal understanding of "immediate presence" over the generally accepted legal definition supplied by the California Supreme Court. He further contends that providing this instruction, "invades the province of the jury and short-circuits the jury's commonsense factfinding function." We disagree. The trial court may modify any proposed instruction to meet the needs of a specific trial, so long as the instruction given properly states the law and does not create confusion. (*People v. Beltran* (2013) 56 Cal.4th 935, 943, fn. 6.) Because the definition provided was a correct statement of law and there is no indication of jury confusion, we find no error.

In an attempt to persuade us otherwise, Pacheco contends that the definition was unnecessary because it was not subject to a technical meaning. (See *People v. Horning* (2004) 34 Cal.4th 871, 908-909 [rejecting the argument that the term "immediate presence" in the context of a robbery is a technical term requiring definition].) But an appellant generally may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the appellant has requested appropriate clarifying or amplifying language. (*People v. Catlin* (2001) 26 Cal.4th 81, 149.) Because the definition correctly states the law, Pacheco forfeits any further challenge to it. "A trial court has no sua sponte duty to revise or improve upon an

accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal [citations]." (*People v. Lee* (2011) 51 Cal.4th 620, 638; see also *People v. Covarrubias* (2016) 1 Cal. 5th 838, 877 [where the instruction for robbery was legally correct, the defendant's failure to request clarifying language forfeits the issue on appeal].)

In sum, we find no basis for relief from instructional error.

## IV

### *Abstract of Judgment*

Pacheco contends two errors must be corrected on the abstract of judgment. We agree.

First, the abstract incorrectly indicates that the 14 convictions were pursuant to a court trial when Pacheco was convicted following a jury trial. This likely represents a scrivener's error in recording the judgment rendered and may be corrected by amendment. (*In re Candelario* (1970) 3 Cal.3d 702, 705.) In addition, "a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts." (*Ibid.*)

Next, the total credit for time spent in custody is incorrect. " 'Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls.' [Citation.]" (*People v. Clark* (2021) 67 Cal.App.5th 248, 260-261.) When a reviewing court modifies a judgment to correct sentencing errors, it may order the preparation of a new abstract of judgment to reflect the modifications. (*People v. Lawley* (2002) 27 Cal.4th 102, 171-172.)

Here, the court sentenced Pacheco to "1,753 actual days custody credits and 15 percent good time/work time credits for an additional 263 days for a total of 2,016 days credit." Thus, it appears the abstract of judgment's reference to 1,736 total credits is incorrect and should be changed to reflect 2,016 total credits.

31

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment consistent with the above and to deliver a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
HULL, J.


_____/s/_____
MAURO, J.